THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* LYNN B. PETTIS, Defendant-Appellee.

(No. 55956; )

First District (1st Division)—May 21, 1973.

*Rehearing denied June 19, 1973.*

Bernard Carey, State's Attorney, of Chicago, (Elmer C. Kissane and James S. Veldman, Assistant State's Attorneys, of counsel,) for the People.

Irwin L. Frazin and Barry S. Frazin, both of Chicago, for appellee.

Mr. PRESIDING JUSTICE BURKE delivered the opinion of the court:

This action arises from the trial court's granting of the defendant's motion to suppress identification testimony on the ground that it resulted from his illegal arrest. The state appeals pursuant to Supreme Court Rule 604. Ill. Rev. Stat. 1971, ch. 110A, par. 604(a)(1).

On August 12, 1969, the defendant was arrested on charges of burglary and impersonating a police officer. While in police custody, the defendant was photographed, and his color photograph was kept on file by the police. Between the date of his arrest and the court date, the defendant's photograph, along with the photographs of other persons, was shown to Miss Gladys High, who had been the victim of an armed robbery on August 4, 1969. She identified the defendant from his photograph, as did a Mr. Porche, who was a witness to the robbery and who was shown the same group of photographs. Based on these identifications the defendant was arrested as he was leaving the courtroom after appearing with respect to the August 12, 1969 arrest. He was then placed in a three-man lineup, where he was identified by Miss High and Mr. Porche.

On November 19, 1969, the defendant again appeared on the August 12, 1969 charges. At the hearing on that date, the court ruled that the arrest of the defendant on August 12, 1969, was made without probable cause and sustained the defendant's motion to suppress evidence. Thereafter, the charges of burglary and impersonating a police officer were dismissed.

After the defendant was indicted for the armed robbery of Miss High, he filed motions to suppress evidence illegally seized and to suppress lineup identification testimony. The ground for the first of these motions was the fact that the color photograph from which Miss High and Mr. Porche first identified the defendant was taken at the time of his illegal arrest on August 12, 1969. The first motion to suppress was granted, and the state filed this appeal.

The defendant argues that but for his illegal arrest on August 12, 1969, his photograph would not have been taken by the police and shown to the witnesses. Without that identification he would not have been arrested a second time. Since the photograph was a fruit of the illegal arrest, the identification testimony originating with it must be suppressed as evidence in the instant case.

The sole question before us is whether the identification testimony of Miss High and Mr. Porche was so tainted by the illegal arrest on August 12, 1969, as to render it inadmissible as evidence against the defendant. Whether a "booking" photograph transmits such a taint is a novel question in this state, although it has been treated in another jurisdiction. (*People v. McInnis*, 6 Cal.3d 821, 494 P.2d 690, 100 Cal.

Rptr. 618.) The California Supreme Court held that identification testimony based on a photograph taken at the time of the defendant's illegal arrest was admissible on the ground that the record revealed no exploitation of the illegal arrest.

The exclusionary rule, which requires that evidence illegally seized be refused admission to prove the charges against the defendant, has been extended to exclude testimony which was obtained from witnesses discovered by reason of an illegal search or seizure. (*People v. Albea*, 2 Ill.2d 317, 118 N.E.2d 277.) The extended rule has been applied in Illinois even when the witness was the victim of the crime. *People v. Bean*, 121 Ill.App.2d 332, 257 N.E.2d 562.

The threshold question is the test to be applied in determining the admissibility of evidence. The defendant contends that it is a "but for" test; *i.e.*, if the police would not have such evidence in their possession but for the initial illegal act, then it must be suppressed. An examination of the authorities does not support this theory.

The Illinois cases on which the defendant relies contain language which implies that a "but for"test was determinative. In the first case, the defendant was walking on the street with a man whose appearance fit the description of a criminal the police were seeking. The police stopped both men, asked for identification, and, finding the identification of one Willie Shard on the defendant, took the defendant to the police station where he was identified by Willie Shard as one of the men who had robbed him. (*People v. Bean*, 121 Ill.App.2d 332, 257 N.E.2d 562.) The arrest was later found to be without probable cause. In holding inadmissible the identification testimony of Willie Shard, this court said:

> "The exhibition of defendant to the victim was a direct consequence of the admittedly unlawful detention of his person. Indeed, the identification would not otherwise have occurred.
>
> We hold the identification of defendant to be a product of the unlawful seizure of his person and consequently all testimony relating thereto improperly admitted into evidence against him. Further, all subsequent identifications of defendant by the victim, including in-court identification, are directly traceable to the unlawful detention of defendant." *People v. Bean*, 121 Ill.App.2d 332, 335, 257 N.E.2d 562, 564.

As for the second case, the court said, in holding inadmissible the testimony of a witness discovered in an illegal search of the defendant's apartment:

> "One could well say of the *Martin* and the *Schmoll cases* that but for the illegal search the names of the prosecuting witnesses

would not have been obtained, and in this case but for the illegal search the witness, Ora Lee Vaughn, would not have been discovered." *People v. Albea,* 2 Ill.2d 317, 321, 118 N.E.2d 277, 279.

The language implies that a "but for" test was applied in those cases. But further examination reveals that the test used was whether the testimony was obtained as a direct result of the original illegal act.

The United States Supreme Court has refused to make a "but for" test the basis of the exclusionary rule: "We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police." (*Wong Sun v. United States,* 371 U.S. 471, 487—88, 9 L.Ed.2d 441, 455, 83 S.Ct. 407, 417.) The court in that case found that testimony of a witness discovered as a direct result of an illegal search should have been excluded.

Within this framework we must conclude that a "but for" test exceeds the mandate of the United States Supreme Court and the courts of this state. It is sufficient, for purposes of the deterrent effect expected of the exclusionary rule, that the test be whether the evidence uncovered was a direct result of the original illegal act. To impose a "but for" test on the police would be a crippling burden, producing results never contemplated by the architects of the exclusionary rule. (See *Mapp v. Ohio,* 367 U.S. 643, 6 L.Ed.2d 1081, 81 S.Ct. 1684.) Applying the defendant's premise, not only would a photograph taken following an illegal arrest result in inadmissible identification testimony, but so would a sketch made from the arresting officer's recollections of the person arrested. Even more intolerable is the prospect of a photograph taken at an illegal arrest rendering inadmissible identification made many years later in entirely unrelated proceedings.

■■ The test being whether the evidence sought to be suppressed was the direct result of the original illegal act, we turn to the United States Supreme Court for guidance in implementing the test. The court has said that the:

"❋ ❋ ❋ question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" *Wong Sun v. United States,* 371 U.S. 471, 488, 9 L.Ed.2d 441, 455, 83 S.Ct. 407, 417.

The primary illegality in this case is the arrest of August 12, 1969. The evidence to which instant objection is made is the identification testimony of Miss High and Mr. Porche. The identification testimony was

"come at" by means of the photograph taken at the time of the illegal arrest.

■■ Thus, our attention is directed to the photograph for a determination of whether the prohibited exploitation has occurred. Photographs, such as the one in the case before us, are taken as a matter of course, principally to identify the defendant as the one arrested. Such a record in the hands of law enforcement officials is considered to be in the public interest. (*Kolb v. O'Connor,* 14 Ill.App.2d 81, 142 N.E.2d 818.) Any question of exploitation, then, must turn on the facts surrounding the illegal arrest.

A situation akin to the one before us exists in the cases involving the suppression of fingerprint evidence. A landmark case, in which the Supreme Court of the United States ruled inadmissible fingerprint evidence obtained at the time of an illegal detention contained the following statement:

> "Detentions for the sole purpose of obtaining fingerprints are no less subject to the constraints of the Fourth Amendment. It is arguable, however, that, because of the unique nature of the fingerprinting process, such detentions might, under narrowly defined circumstances, be found to comply with the Fourth Amendment even though there is no probable cause in the traditional sense." *Davis v. Mississippi,* 394 U.S. 721, 727, 22 L.Ed.2d 676, 681, 89 S.Ct. 1394, 1397—98.

Following this statement the court proceeded to describe some of the features of the fingerprinting process which make it a minimal intrusion on the privacy of the individual. Nevertheless, the court held the evidence in this case inadmissible because there had been a complete absence of procedures which complied with the fourth admendment protections. Since this Supreme Court decision, another court has found admissible fingerprint evidence obtained at the time of an illegal arrest. After noting that the illegal arrest was not for the sole purpose of obtaining the defendant's fingerprints, the court said: "The arrest may have been a mistake but it was not an example of overreaching governmental misconduct which must be suppressed at any cost." *Paulson v. State* (Fla. App. 1972), 257 So.2d 303, 305.

Although the "booking" photographs which gave rise to the identification testimony in the instant case have not been specifically designated as within the veil of the fourth amendment protections, it is our belief that the same reasoning should be applied to photographs as to fingerprints; *i.e.,* a detention for the sole purpose of initiating or enlarging the defendant's records held by the police will be subject to the prohibi-

tions. Thus, in determining whether the photographs were obtained for exploitation purposes, we envision the original arrest as being based on such a lack of probable cause as to force the conclusion that it was made solely to acquire data regarding the defendant. In such case, a photograph could conceivably carry the taint of the initial illegality beyond the crime for which the defendant was illegally arrested.

Proceeding to the facts in this case, we conclude that, while there may have been insufficient probable cause for arrest, the record contains information which takes the photographs out of the prohibited category, and the consequent identification testimony should have been admitted. The defendant was arrested on August 12, 1969, after he was discovered near the site of an attempted burglary. The officer who responded to the burglary call came upon the defendant while searching the vicinity of the crime. He asked the defendant for identification and was shown a police badge. The defendant said he lived in a neighboring building. The police officer observed the defendant attempting to enter his alleged home. The owner of the building responded to the defendant's attempted entry and told the police officer that he did not know the defendant. The officer checked the badge number of the one shown him by the defendant and found that it had been stolen in a burglary. The defendant was then arrested and his photograph taken. Based on these facts, we cannot find that the illegal arrest was prompted by a desire for records only. We conclude that the identification testimony was not acquired by exploiting the defendant's illegal arrest; and the motion to suppress it should have been denied.

For these reasons the order to suppress is reversed and the cause remanded with directions to reinstate the cause and for further proceedings.

Order reversed and cause remanded with directions.

GOLDBERG and EGAN, JJ., concur.