THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
SAM ROBERT FAULISI *et al.*, Defendants-Appellants.

First District (1st Division)   No. 76-1273

Opinion filed August 8, 1977.

James Geis and Martin Carlson, both of State Appellate Defender's Office, of Chicago, for appellants.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Kenneth T. McCurry, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE McGLOON delivered the opinion of the court:

After a bench trial in the circuit court of Cook County, defendants, Sam Robert Faulisi and Thomas Vogt, were each convicted of two counts of armed robbery involving a suburban home invasion. (Ill. Rev. Stat. 1973, ch. 38, par. 18—2.) Each defendant was sentenced to two concurrent terms of 15 to 35 years. Both defendants had filed motions to quash the arrests and suppress identification testimony and inculpatory statements, but after a hearing the motions were denied. The issues for review are (1) whether defendants' convictions were improperly based upon evidence which was the fruit of being unlawfully arrested and detained, and (2) whether defendants were properly convicted of two counts of armed robbery.

At the hearing on the motion to quash the arrests and suppress evidence, it was established defendants were arrested pursuant to an investigation of an armed robbery at the Chicago Coin Corporation during which a dark attache' case and numerous coins were taken. Officers Lapidus and Carroll had a conversation with an informant who told them that an attempt would be made to sell the merchandise from the coin shop robbery at the Skylark Restaurant. He told the officers there would be approximately three persons arriving in a white, 1975 Cadillac and approximately three persons arriving in a white, 1974-75 Continental on November 18, 1974. The informant stated the attache' case and coins would be brought in one of the cars.

Both officers staked out the restaurant and observed a white 1975 Cadillac and a white 1974 Continental arrive with three occupants in each car. One of the occupants of the Cadillac emerged carrying a dark attache' case, and both defendants arrived in the Continental. All six occupants went into the restaurant and occupied the same booth. The officers observed the open attache' case on the table and saw both defendants handling coins contained in clear plastic envelopes. All six persons left the restaurant at the same time, and all departed in the same cars they arrived in. The attache' case was still being carried by one of the men in the Cadillac. Both cars left the restaurant together, one behind the other.

Both cars were stopped approximately 10 or 12 blocks from the restaurant, and the occupants were arrested and taken to police headquarters where a lineup was held. The victim of the Chicago Coin Corporation robbery was able to identify the attache' case and its contents, but he was not able to identify anyone in the lineup. A second lineup was arranged for 8 p.m. the following evening for the victims of other coin shop robberies who were not able to attend the first lineup.

Prior to the second lineup, Officer Carroll saw a composite sketch of two people wanted in connection with a home invasion in Arlington Heights, Illinois. He testified the sketch appeared to be a "photograph" of the two defendants. The victims of the home invasion viewed the lineup later that evening, and each identified both defendants. Seven or eight coin shop victims also attended that lineup, but none was able to make a positive identification. It was stipulated that defendants were not charged with any crimes until the evening of November 19, 1974, after the second lineup.

The motions to quash were denied by the court and the case proceeded to trial. At trial Beverly Kelly testified she lived with her family in Arlington Heights, Illinois, and that at 11:30 a.m. on November 15, 1974, she was in her home with her daughter, Diane, when both defendants came to the door. Vogt told her they were from the sheriff's police and had a wallet they believed her husband had lost. She looked through it and identified it as her husband's. Vogt indicated he needed to have her signature to sign a release, and she admitted them to the house for that purpose. Upon gaining admission to the house, Vogt took a gun out of a briefcase and announced a "stickup." Faulisi also produced a small gun. While Faulisi watched Mrs. Kelly and her daughter in the family room, Vogt took money and credit cards from Mrs. Kelly's purse. Defendants tied the Kellys' hands with tape and some heavy cord, and while Faulisi continued to watch the Kellys, Vogt searched through the house and took jewelry belonging to Mrs. Kelly. When Diane Kelly told defendants that several children would soon be home for lunch, defendants left after

cutting the phone wires and tying their ankles together with tape. Approximately $10 in cash, credit cards, a ring and some other jewelry were taken. They also took Mr. Kelly's wallet with them.

Diane Kelly testified to the same events as her mother, and both Kellys testified they viewed a lineup at which each was able to identify both defendants.

There was a stipulation that if Officer George Eckblad of the Arlington Heights Police Department were called, he would testify that on November 19, 1974, at approximately 9:30 p.m., he had a conversation with Sam Faulisi at the Arlington Heights police station. He admonished Faulisi with respect to his constitutional rights and Faulisi stated that he understood those rights and wanted to waive them. Faulisi admitted the armed robbery at the Kelly residence, but initially stated he did not know where the wallet was. About 20 minutes later, he stated he had lied and could tell where the wallet could be located if he made a telephone call. He was allowed to make the call and the wallet was recovered. There was also a stipulation that if Officer Dech of the Arlington Heights police force were called, his testimony would corroborate Faulisi's part in obtaining the wallet.

Defendants first contend their warrantless arrests were unlawful because the arresting officers did not have probable cause to believe they had committed an offense. Defendants suggest that even if the officers had probable cause to arrest the three men in the Cadillac who had possession of the attache' case, there was no basis for their (defendants) arrests because there was no evidence to show they knew the coins were stolen, especially since they did not take possession of the coins. They conclude the identification testimony of the Kellys and the inculpatory statements given by Sam Faulisi were fruit of the unlawful arrests and detention, and the court erred in denying the motion to suppress evidence.

Defendants further contend they were held in custody over 24 hours solely for the purpose of an investigation regarding unrelated crimes, and except for their detention the identification testimony and inculpatory statement of Sam Faulisi would not have occurred. *People v. Bean* (1970), 121 Ill. App. 2d 332, 335, 257 N.E.2d 562; *People v. Hornal* (1975), 29 Ill. App. 3d 308, 317, 330 N.E.2d 225.

■■ In the absence of a warrant, an arrest may be made when the officer has reasonable grounds to believe that the person is committing or has committed an offense. (Ill. Rev. Stat. 1973, ch. 38, par. 107—2.) Whether probable cause for arrest exists in a particular case depends upon the totality of the facts and circumstances known to the officer when the arrest is made. (*People v. Clay* (1973), 55 Ill. 2d 501, 504-505, 304 N.E.2d 280; *People v. Gwin* (1971), 49 Ill. 2d 255, 258, 274 N.E.2d 43.) In

deciding the question of probable cause, the courts are not disposed to be unduly technical, and the determination is made based on the factual and practical considerations of every day life on which reasonable men, not legal technicians, act. (*Draper v. United States* (1959), 358 U.S. 307, 3 L. Ed. 2d 327, 79 S. Ct. 329; *People v. Clay.*) The information upon which an arrest may be made is less than is necessary to secure a conviction. *People v. Johnson* (1973), 15 Ill. App. 3d 741, 744, 305 N.E.2d 208; *People v. Novak* (1965), 33 Ill. 2d 343, 346, 211 N.E.2d 235, *cert. denied*, 384 U.S. 1016.

In this case the arresting officers were investigating a series of coin robberies and knew a dark attache' case and coins had been taken from a particular coin shop. Shortly thereafter, an informant gave them information that those coins would be sold or an attempt to sell would be made at a particular place and time. The informant described the cars and the number of men in each car who would be participating in the deal.

Although there had been no allegation about the reliability of the informant, his information was sufficient to establish probable cause, because there was independent corroboration of his information by the police officers. *People v. Marlow* (1976), 39 Ill. App. 3d 177, 180-81, 350 N.E.2d 215; *People v. Brainerd* (1976), 41 Ill. App. 3d 183, 186, 355 N.E.2d 117.

■■ Section 16—1(d) of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 16—1(d)) provides that one who obtains control over property under such circumstances that he knows the property is stolen is guilty of theft. In this case defendants did not take possession of the coins at the restaurant, but both defendants were seen handling the coins there, and the cars departed from the restaurant together and continued one behind the other until the stop was made. Under these circumstances, there was probable cause to arrest defendants as well as the men in the Cadillac who had maintained possession of the coins up until that time.

■■ Even if the arrests were considered to be illegal, defendants are not entitled to the suppression of the evidence because the arrests did not constitute flagrant misconduct and because the arrival of the composite sketches was an intervening factor which attenuated the taint of the alleged illegal arrest. An illegal arrest or detention does not *per se* render a confession or identification inadmissible. (*In re Lamb* (1974), 21 Ill. App. 3d 827, 316 N.E.2d 42, *affirmed*, 61 Ill. 2d 383, 336 N.E.2d 753; *People v. Kees* (1965), 32 Ill. 2d 299, 302, 205 N.E.2d 729; *People v. La Frana* (1954), 4 Ill. 2d 261, 266, 122 N.E.2d 583.) In *Wong Sun v. United States* (1963), 371 U.S. 471, 488, 9 L. Ed. 2d 441, 83 S. Ct. 407, the court stated that all evidence cannot be characterized as fruit of the poisonous tree merely because it would not have come to light but for the illegal actions of the police, and the test to be applied is whether the evidence to which

objection is made resulted from an exploitation of the illegality or by means sufficiently distinguishable to be purged of the primary taint. In *Brown v. Illinois* (1975), 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254, the United States Supreme Court again declined to adopt a "but for" rule and held that the attenuation of an unconstitutional arrest would be considered in the light of any intervening circumstances and, in particular, in light of the purpose and flagrancy of the official misconduct. In the case of *People v. Riszowski* (1974), 22 Ill. App. 3d 741, 746, 318 N.E.2d 10, the court stated that the illegality of an arrest will not itself require the automatic suppression of statements made by the accused subsequent to his arrest from evidence at trial. The court stated it would look to the intervention of other circumstances subsequent to the illegal arrests which would provide a cause so unrelated to the initial illegality that the acquired evidence may not reasonably be said to have been directly derived from that illegal arrest.

The facts of *People v. Pettis* (1973), 12 Ill. App. 3d 123, 298 N.E.2d 372, are similar to those of the instant case. In *Pettis* defendant was arrested and photographed, and his photograph was kept on file by the police. Between the time of his arrest and his court date, at which it was determined that his arrest had been made without probable cause, a victim of an armed robbery identified defendant from his photograph. The defendant filed a motion to suppress the identification testimony alleging that the photograph was the fruit of an illegal arrest, and "but for" his illegal arrest his photograph would not have been taken. The court rejected the "but for" test and found that his initial arrest, although illegal, was not based upon such a lack of probable cause as to force the conclusion that it was made solely to acquire data regarding defendant.

■■■ In this case the arrival of the composite sketches of defendants during the time when they were in custody was an intervening event which was not a product of the arrest and was so unrelated to the arrest that the subsequently acquired evidence may not reasonably be said to be derived from it. In *Silverthorne Lumber Co. v. United States* (1920), 251 U.S. 385, 392, 64 L. Ed. 319, 40 S. Ct. 182, the Supreme Court stated that the exclusionary rule has no application when the government learned of the evidence from an independent source. That principle was affirmed in the case of *Nardone v. United States* (1939), 308 U.S. 338, 341, 84 L. Ed. 307, 60 S. Ct. 266. It is also clear that even if the arrests were not deemed to be lawful, that did not constitute flagrant misconduct.

■■ Defendants next contend that they were improperly convicted of two counts of armed robbery. Although the evidence shows that both Mrs. Kelly and her daughter were tied up, and both robbers threatened each of them with guns, the property taken was solely that of Mrs. Kelly. In the case of *People v. Hunter* (1976), 42 Ill. App. 3d 947, 951, 356

N.E.2d 822, the court held that no more than one judgment could be entered even though the two victims were both threatened with force, and both had custody of the property unlawfully taken. In the case of *People v. Washington* (1975), 29 Ill. App. 3d 536, 538, 331 N.E.2d 169, the appellate court vacated one of two convictions for robbery where the evidence showed that defendant had threatened both a husband and a wife, but had only taken property belonging to the wife.

The State cites the case of *People v. Butler* (1976), 64 Ill. 2d 485, 356 N.E.2d 330, for the proposition that when the threat of force is used against both victims and the property is taken from the presence of both victims, multiple convictions are proper. However, in *Butler*, property was taken from each victim. In this case no property belonging to or under the protection of Diane Kelly was taken; therefore, only one conviction was proper. *People v. Braverman* (1930), 340 Ill. 525, 530-31, 173 N.E. 55; Ill. Ann. Stat., ch. 38, par. 18—1, Committee Comments, at 213 (Smith-Hurd 1970).

Accordingly, the judgments of the circuit court for the armed robbery of Beverly Kelly are affirmed. The cause is remanded with directions that the circuit court vacate defendants' convictions and sentences concerning the armed robbery of Diane Kelly.

Affirmed in part and remanded with directions.

GOLDBERG, P. J., and O'CONNOR, J., concur.