THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JOHN ROSS, Defendant-Appellant.

First District (1st Division)   No. 77-1357

Opinion filed May 22, 1978.

858

Ralph Ruebner and David Mejia, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Iris E. Sholder, and Marva W. Cohen, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

After a jury trial, John Ross (defendant) was convicted of rape (Ill. Rev. Stat. 1975, ch. 38, par. 11—1) and indecent liberties with a child (Ill. Rev. Stat. 1975, ch. 38, par. 11—4(a)(1)). Defendant was sentenced to 75 to 225 years.

Defendant appeals. He contends the court improperly denied his motion to suppress photographic identifications, claiming his photograph was taken following an illegal arrest; the prosecutor's closing argument was prejudicial and the indecent liberties conviction should be vacated in view of the rape conviction. The State agrees to the last contention but urges that the photographic identification was the result of an arrest premised upon probable cause and the prosecutor's closing remarks were reasonable inferences drawn from the evidence presented at trial.

The complainant is an 8-year-old girl who was attacked and raped on May 20, 1976, near her home in Markham, Illinois. We will summarize evidence at the hearing on the motion to suppress and at trial.

On the motion, Officer Schultz, a patrolman for the Markham Police Department, stated that on May 20, 1976, at 12:15 p.m., he spoke with a 12-year-old girl at her home. She reported an assault she experienced that day a short time earlier. The girl stated her assailant was a heavyset male Negro, 5 feet 5 inches to 5 feet 8 inches tall, approximately 30 years old, wearing brown and white checkered pants. According to the young girl this man approached her on the street, quickened his pace and seized her by the arm. The girl was rescued unharmed by a neighbor who had witnessed the incident.

At 6:30 p.m. that same day, May 20, 1976, Officer Schultz was present when complainant described the individual who raped her to him and Officer Simmons, another member of the Markham Police Department. Complainant stated the man was a heavyset Negro, 25 to 30 years old, 5 feet 8 inches tall, wearing a beige sweater and maroon slacks.

On May 21, 1976, Officer Schultz received a radio report while on patrol. The dispatcher told him the complainant's mother had telephoned and reported that the suspect who allegedly raped her daughter was walking in the vicinity of their home. As the officer arrived in the area, several children ran up to the squad car saying "the man" he was looking for had just entered a house down the street. One child ran ahead and specifically pointed to defendant's home. The officer observed defendant, with whom he was previously acquainted, standing inside the screen door. As the officer approached, defendant disappeared and his mother came to the doorway. The officer asked Mrs. Ross if he could speak with defendant. He told defendant to come to the police station for investigation of a rape. He gave defendant the *Miranda* warnings and then took him to the station. The officer did not have an arrest warrant.

Defendant's mother testified Officer Schultz said he was arresting defendant for suspicion of rape. Her account of the arrest differed from Officer Schultz's narrative in that she did not recall defendant standing in the doorway when the officer approached the home.

Officer Simmons testified he spoke with defendant at the police station May 21, 1976, after Officer Schultz had taken defendant into custody. Defendant was charged with the attempted abduction of the 12-year-old girl above discussed. Defendant said, "I admit I'm guilty about trying to grab the [12-year-old] girl but that's all I have got to say." The police department took defendant's photograph and he was then released.

Shortly thereafter, this picture and a group of 9 others were presented to complainant while she was hospitalized as a result of the rape. She identified defendant from the picture. Officer Simmons thereupon obtained and executed a warrant for defendant's arrest on May 24, 1976.

Turning to the trial itself, complainant's mother testified that on May 20, 1976, complainant came home from school at the noon hour as she had forgotten her lunch. At 12:30 p.m. complainant left to return to school. Later that afternoon the witness received a telephone call from the school office reporting that complainant was ill. The child was brought home and went directly to bed. An hour or so thereafter complainant told the witness of bleeding when she urinated. Complainant then related that as she returned to school a man grabbed her, showed a knife and raped her. Officers Schultz and Simmons came to the home. That same evening complainant entered the hospital where she underwent surgery and

remained some 4 or 5 days. The doctor who examined complainant the evening of May 20, 1976, stated complainant was bleeding vaginally due to a large vaginal laceration. No sperm was found.

The complainant, 8-years old at the time of trial, testified she met a man while she was walking back to school after lunch. This man told her not to scream and showed her a knife. He took her hand and led her to a grassy area where he took off her underpants, lay on top of her 2 to 3 minutes, and "stuck" his penis in her vagina. He then instructed her to walk away without looking back. When she arrived at school she joined her class but shortly told her teacher she was not feeling well. She eventually related the incident to her mother and took the police officers to the grassy area above described. The complainant recalled recognizing "the man who did it" from a series of photographs presented to her at the hospital. She made an in-court identification of defendant as the offender.

On cross-examination the witness stated her assailant was wearing checkered pants and a blue shirt. She looked directly at his face for perhaps 4 seconds during the walk to the grassy area. On redirect she stated her eyes were open the entire time while the man was on top of her and recalled looking at him three separate times as they walked down the street.

Mrs. Ruth Biggs, complainant's neighbor, stated that at 12:45 p.m. on May 20, 1976, she saw a man and a little girl walking down the street. The man held the little girl's hand and continually stared at Mrs. Biggs as the pair passed her home. The witness was in her front yard at the time within 5 to 10 feet of these people as they walked by. The witness stated she again saw the man on May 21, 1976. She was standing at the front desk of the Markham Police Station when the man ran out from the building. The witness identified defendant as this same individual. On cross-examination she stated she went to the police station May 21, 1976, to report the incident witnessed on the street the previous day. The witness also selected defendant's picture from a photographic lineup some weeks later. She further recalled that the man walking with the child was wearing checkered pants.

Sharon Mattison, a crossing guard at complainant's school, testified for the defense. The witness stated that a man wearing a beige shirt and maroon checkered pants spoke to her during the noon hour on May 20, 1976. She was unable to identify this man when the police later showed her a series of photographs and stated she did not see the man in the courtroom. On cross-examination it was revealed the witness hesitated when shown defendant's photograph during the photographic lineup and remarked that defendant resembled the man she had seen on May 20, 1976, wearing maroon pants.

Three alibi witnesses stated defendant was in their company on May

20, 1976. Rena Dye testified that on May 20, 1976, she visited her next door neighbor, Della Johnson. Also present were Wendy Jackson, Charles Miller, Ronald Ross (defendant's brother) and defendant, who arrived at 11:30 a.m. She recalled that Della Johnson and defendant left briefly to purchase wine and beer. At 1:30 p.m. the witness returned to her own home. The defendant, who accompanied her to her house, left and rejoined Della Johnson at 2:30 p.m. Della Johnson substantially duplicated the testimony of Rena Dye although she did not include Wendy Jackson in the list of visitors and stated Charles Miller only "stopped by." Ronald Ross also stated he was at the Johnson residence May 20, 1976, with Rena, Charles Miller, Della Johnson and defendant. Another brother of defendant, Randy Ross, stated that on May 20, 1976, defendant left home at 11:30 a.m. and returned at 3 p.m.

Defendant testified in his own behalf. He denied raping complainant and stated he spent the disputed hours at the Johnson residence, arriving at 11:30 a.m., briefly leaving with Della Johnson to purchase wine and beer at 12:30 p.m., visiting Rena Dye at her home in the afternoon, and accepting a ride to his own residence from Della Johnson at 2:30 p.m.

■■ We initially turn to defendant's contention the court erred in denying his motion to suppress. In determining whether the original warrantless arrest was based upon probable cause, the Illinois Criminal Code provides that a police officer may arrest without a warrant when, "He has reasonable grounds to believe that the person is committing or has committed an offense." (Ill. Rev. Stat. 1975, ch. 38, par. 107—2(c).) In applying this provision, Illinois courts have articulated the test regarding the legally synonymous phrases "reasonable grounds" and "probable cause" as whether " 'the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a man of reasonable caution in believing that an offense has been committed and that the person arrested has committed the offense.' " (*People v. Blitz* (1977), 68 Ill. 2d 287, 292, 369 N.E.2d 1238 quoting from *People v. Robinson* (1976), 62 Ill. 2d 273, 276, 342 N.E.2d 356.) We also note that the ultimate burden of proving lack of probable cause rests upon the defendant. While the State has the burden of going forward with evidence to counter a prima facie case made by defendant, the "ultimate burden of proof" on this factual issue remains with the defendant throughout the hearing. (*People v. Turner* (1976), 35 Ill. App. 3d 550, 567, 342 N.E.2d 158, *appeal denied,* 63 Ill. 2d 554, and cases there cited.) As a reviewing court, we may not disturb the conclusion reached by the trial court unless we find it to be "manifestly erroneous." *People v. Clay* (1973), 55 Ill. 2d 501, 505, 304 N.E.2d 280, and cases there cited.

■■ In applying the above principles, in our opinion the police officer had knowledge of sufficient facts and circumstances to believe defendant

committed the rape and that he acted with "reasonable caution" in thereby initially arresting defendant on May 21, 1976. Officer Schultz was aware the police department was looking for an individual who had assaulted a 12-year-old girl, as well as an individual who abducted and raped an 8-year-old girl the same day. Both girls had provided Officer Schultz with similar basic descriptions of a young male Negro, 25 to 30 years old, 5 feet 5 inches to 5 feet 8 inches tall. Officer Schultz proceeded immediately to complainant's street in response to an urgent phone call from complainant's mother. She notified the department the defendant was just seen walking by. It was only when Officer Schultz arrived in response to this message that the young children, apparently anticipating the arrival of the squad car, ran spontaneously to Schultz exclaiming that "the man" for whom he was looking just entered defendant's home. Upon arriving at defendant's home, it was Officer Schultz's testimony he saw defendant in the doorway. In view of the cumulative effect of all of these factors, we believe Officer Schultz acted upon reasonable grounds and with probable cause in arresting defendant.

■■ We note also that the standard applied in determining probable cause "requires less evidence than would be necessary for conviction of the crime* * *." (*People v. Hinton* (1977), 45 Ill. App. 3d 925, 927, 360 N.E.2d 451, *appeal denied*, 66 Ill. 2d 627.) In *Robinson*, 62 Ill. 2d 273, 276, 277, the court cited and quoted from *Clay*, 55 Ill. 2d 501, 504-05, to the effect that in questions of probable cause "the courts deal with probabilities and are not disposed to be unduly technical. These probabilities are the factual and practical considerations of everyday life on which reasonable men, not legal technicians, act." In the case before us, it was the duty of the police officers to ascertain if there was sufficient evidence to charge the arrested person with the crime. They had two alternate methods of discharging this duty. They could have taken the suspect to be viewed by the complainant in the hospital; or they could have taken his photograph and submitted it to the complainant with a number of other pictures. In our opinion, they acted wisely and in the best interests of defendant and the complainant in choosing the latter course. In this manner they avoided the possibility of a traumatic shock to the complainant and used less suggestive methods in the identification process. Upon consideration of the evidence before the trial court on the motion to suppress, we cannot say that the ruling of the trial court was "manifestly erroneous." We affirm the denial of said motion.

■■ Even if it were to be assumed for ease of exposition that Officer Schultz lacked probable cause, the exclusionary rule does not ipso facto prohibit the use of defendant's police station photograph in a subsequent photographic identification. In *People v. Pettis* (1973), 12 Ill. App. 3d 123, 298 N.E.2d 372, this court rejected the "but for" application of the

exclusionary rule. We stated the test as "whether the evidence uncovered was a direct result of the original illegal act." (*Pettis,* 12 Ill. App. 3d 123, 126.) We pointed out that police photographs "are taken as a matter of course, principally to identify the defendant as the one arrested." (*Pettis,* 12 Ill. App. 3d 123, 127.) We held that an identification based upon use of such photographs should be excluded only if the initial arrest was solely for the exploitative purpose of obtaining photographs. (See also *People v. Faulisi* (1977), 51 Ill. App. 3d 529, 533-34, 366 N.E.2d 1072, *appeal denied,* 66 Ill. 2d 640, and authorities therein cited.) The evidence in the case before us demonstrates that even without probable cause for the arrest, the taking of defendant's picture and its use in identification were not contrary to law.

The defendant cites and depends chiefly upon *People v. Hornal* (1975), 29 Ill. App. 3d 308, 330 N.E.2d 225. We do not find *Hornal* applicable to the case before us. There, defendant was subjected to an illegal arrest without probable cause for passing a stolen check. (See *Hornal,* 29 Ill. App. 3d 308, 316.) On defendant's trial for attempt burglary, the trial court "improperly admitted line-up identification, which was obtained as a direct result of the defendant's illegal arrest * * *" in connection with the check cashing. (29 Ill. App. 3d 308, 320.) The court stated that this improper evidence was not harmless error but that it required reversal of the conviction. We note also that the court in *Hornal* applied the "but for" test. (29 Ill. App. 3d 308, 317.) Compare *Brown v. Illinois* (1975), 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254, cited in *Faulisi,* 51 Ill. App. 3d 529, 534.

We will add that in the case before us defendant makes no contention regarding the legality and fairness of the photographic identification. Similarly, the in-court identification made by the victim is unassailed. In our opinion, this testimony is sufficient to convict beyond reasonable doubt particularly in view of the corroboration thereof by the remaining identification witness, Ruth Biggs. Although defendant attempts to make no point on the sufficiency of the evidence to prove reasonable doubt, we will also add that in the case before us there is a conflict between the alibi testimony and the strong prosecution evidence. In our opinion, this conflict presents only issues of weight and credibility which it was the province of the jury to resolve. (*People v. Yarbrough* (1977), 67 Ill. 2d 222, 227, 367 N.E.2d 666.) A reversal of the conviction here would be warranted only when "the evidence is so improbable as to raise a reasonable doubt of guilt." (*People v. Stringer* (1972), 52 Ill. 2d 564, 568, 289 N.E.2d 631 quoting from *People v. Mills* (1968), 40 Ill. 2d 4, 19, 237 N.E.2d 697; accord, *People v. Manion* (1977), 67 Ill. 2d 564, 578, 367 N.E.2d 1313.) Although two of the alibi witnesses and defendant himself contradicted complainant by placing defendant at the Johnson residence

during the disputed hours of the rape, the jury was under no obligation to believe the testimony of these persons. *People v. Jackson* (1973), 54 Ill. 2d 143, 149, 295 N.E.2d 462; *People v. Catlett* (1971), 48 Ill. 2d 56, 64, 268 N.E.2d 378.

■■ Defendant's second contention is directed to the remarks of the prosecutor during closing argument. During the opening part of the prosecutor's argument, defense counsel made no objections to any of the remarks now cited as erroneous. It is an accepted principle that "allegedly prejudicial argument will not be considered in the absence of an objection." (*People v. Witherspoon* (1975), 33 Ill. App. 3d 12, 22, 337 N.E.2d 454, *appeal denied,* 61 Ill. 2d 604.) Thus, the impropriety of the cited remarks warrants consideration only if it appears the prosecutor's comments were "so prejudicial that defendant did not receive a fair trial or were so flagrant as to threaten deterioration of the judicial process." (*People v. Smothers* (1973), 55 Ill. 2d 172, 176, 302 N.E.2d 324.) Such conditions do not exist here.

■■ Defendant objects to the prosecutor's characterization of the alibi witnesses as "liars." An examination of the record reveals that, in analyzing the individual testimony of these witnesses, the prosecutor referred to various inconsistencies as a "pack of lies," a "cover-up" or a "bunch of lies." It is permissible for a prosecutor to comment upon the credibility of the witnesses during closing argument (*People v. Franklin* (1976), 42 Ill. App. 3d 408, 422, 355 N.E.2d 634, *appeal denied,* 65 Ill. 2d 578). In the case before us these comments were in fact based upon contradictions made by the various defense witnesses. *People v. Smith* (1977), 53 Ill. App. 3d 395, 405, 368 N.E.2d 561, *appeal denied,* 67 Ill. 2d 594; *People v. Lewis* (1976), 38 Ill. App. 3d 995, 999, 349 N.E.2d 528. See also *People v. Terrell* (1975), 62 Ill. 2d 60, 63-64, 338 N.E.2d 383.

The remaining objections are directed to the prosecutor's rebuttal wherein he again referred to the alibi witnesses as "lying"; responded to defense counsel's discussion of the crossing guard by commenting that perhaps this witness also "lies" and expressed concern that defendant can "walk out of here." We again note the references to lies by the witnesses were based upon stated inconsistencies in their testimony or upon their failure to come forth with the alibi statements prior to trial. (*People v. Franklin* (1976), 42 Ill. App. 3d 408, 422, 355 N.E.2d 634, *appeal denied,* 65 Ill. 2d 578.) The comments regarding the crossing guard were a reasonable response to defense counsel's closing argument (*People v. Barksdale* (1974), 24 Ill. App. 3d 489, 503, 321 N.E.2d 489, *appeal denied,* 58 Ill. 2d 594). It is permissible for the State "to dwell upon the evils of crime and to urge the fearless administration of the law." (*People v. Hairston* (1970), 46 Ill. 2d 348, 375, 263 N.E.2d 840, *cert. denied* (1971), 402 U.S. 972, 29 L. Ed. 2d 136, 91 S. Ct. 1658.) In summary, in our opinion,

upon review of the entire closing argument, the prosecutor's comments did not constitute " 'a material factor in the conviction * * *.' " *People v. Clark* (1972), 52 Ill. 2d 374, 390, 288 N.E.2d 363, quoting from *People v. Swets* (1962), 24 Ill. 2d 418, 423, 182 N.E.2d 150.

■■ Finally, we agree with both parties that under *People v. Lilly* (1974), 56 Ill. 2d 493, 309 N.E.2d 1, we should vacate the conviction for indecent liberties. This rests upon the same act as the conviction for rape. The court imposed only one sentence of imprisonment, 75 to 225 years. The record before us makes it extremely difficult for us to conclude that the sentence here imposed was "an abuse of discretion" by the skilled and capable trial judge. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882.) However, we have given thought to the possibility that both convictions were considered and reflected in the severity of the sentence imposed. In view of this possibility we prefer to, and we do affirm the conviction for rape, vacate the sentence, vacate the conviction for indecent liberties and remand the cause for resentencing upon the conviction for rape.

Conviction for rape affirmed, conviction for indecent liberties vacated, sentence vacated, cause remanded for resentencing on rape.

O'CONNOR and BUCKLEY, JJ., concur.