THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIE WASHINGTON, Defendant-Appellant.

First District (1st Division)   No. 76-1558

Opinion filed March 6, 1978.—Modified on denial of rehearing June 19, 1978.

James Geis, Victoria J. Meyers, Richard Geddes, and Gary Jay Ravitz, all of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Michael E. Shabat, and John J. Rayman Lieberman, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

Defendant, Willie Washington, was indicted for the offenses of attempt murder, aggravated battery and armed robbery. He was tried in the circuit court of Cook County by a jury, which returned verdicts of guilty on all counts. He was sentenced to imprisonment for from 10 to 30 years for attempt murder, from 10 to 30 years for armed robbery, and from 1 to 10 years for aggravated battery.

On appeal, he contends that (1) the jury instructions erroneously permitted a verdict of guilty on the charge of attempt murder without a finding that defendant possessed the requisite intent to kill; (2) his motion to suppress the identification testimony was improperly denied, where the identification was obtained as a direct result of an unlawful arrest; and (3) the court erred in entering judgment and sentences on both the

aggravated battery and attempt murder convictions, where the offenses arose from a single act.

The facts can be briefly stated. At about 2:15 a.m. on August 11, 1974, two armed men robbed the patrons and employees of a gasoline service station located at 43rd Street and Cottage Grove Avenue, Chicago. Steven Lias, an employee of the station, was talking on the telephone when a man with a handgun forced him into the service bay area of the station, where another man armed with a sawed-off shotgun was covering three other employees and three customers. The man with Lias took Lias's wallet, then the robbers forced everyone to lie face down on the floor. The two men searched everyone, taking money, jewelry and other valuables. The man with the handgun threatened to shoot off the finger of victim Johnny Van because he could not remove a ring from it. Customer Terry McCambry had $21 taken from his person and his wife, Yvonne McCambry, had $11 and her purse taken from her. Thomas Tate, a station employee who had just been paid that night, was robbed of $145 of personal money and $300 of station money on his person. In searching him a third time, the man with the shotgun discovered a pistol in Tate's belt, which belonged to the station and which Tate had been carrying for security purposes. The man with the handgun told his accomplice, "He had a gun, he was going to shoot you, so you might as well shoot him." Tate was shot in the back by the man with the shotgun. Having collected all the valuables, the robbers forced the victims into a back room, where they were directed to remove their pants. The robbers then fled, the police were called and Tate was taken to the hospital, where he was confined for two months recuperating from the shotgun wound in his back. He displayed to the jury the deep scar that remained in his back despite skin graft surgery.

At trial, Lias, Tate, Terry McCambry, Yvonne McCambry, Johnny Van and Bennie Whitehead, another victim, pointed out defendant Washington as the man who carried the handgun and who had ordered the shooting of Tate. There were bright fluorescent lights in the station and the robbery lasted for about half an hour.

Defendant testified that he did not commit the offenses. He offered as an alibi that he was, on the night of the crime, helping his brother with a party at a tavern until 2 a.m., when he went to another tavern at 47th and Cottage Grove Avenue until 3:30 a.m. At that time he took the woman he was with all evening, Althea Dixon, home and went home himself. Althea Dixon died four weeks before trial. He had not seen his brother since he was arrested.

■■ At the threshold of our consideration of the jury instruction issue is the State's claim that defendant has waived it for failure to object at the conference on instructions or to specifically raise the issue in defendant's

post-trial motion for a new trial. But because the court and not the defendant bears the burden of seeing that the jury is instructed on the elements of the crime charged (*People v. Parks* (1976), 65 Ill. 2d 132, 137, 357 N.E.2d 487, 489), the waiver rule is relaxed when "the interests of justice require." (Supreme Court Rule 451(c) (58 Ill. 2d R. 451(c)); *People v. Jenkins* (1977), 69 Ill. 2d 61, 66, 370 N.E.2d 532, 534; *People v. Harris* (1978), 72 Ill. 2d 16, 377 N.E.2d 28.) We therefore consider the issue on its merits.

The instructions at issue were:

"A person commits the crime of attempt who, with intent to commit the crime of murder, does any act which constitutes a substantial step toward the commission of the crime of murder.

The crime attempted need not have been committed." IPI Criminal No. 6.05.

"A person commits the crime of murder who kills an individual if, in performing the acts which cause the death,

he intends to kill or do great bodily harm to that individual; or he knows that such acts will cause death to that individual; or

he knows that such acts create a strong probability of death or great bodily harm to that individual." (IPI Criminal No. 7.01.

"To sustain the charge of attempt, the State must prove the following propositions:

*First*: That the defendant [or a person for whose conduct he is responsible,] performed an act which constituted a substantial step toward the commission of the crime of murder; and

*Second*: That the defendant [or a person for whose conduct he is responsible] did so with intent to commit the crime of murder.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt, then you should find the defendant not guilty." IPI Criminal No. 6.07.

Defendant contends that the instructions permitted the jury to find him guilty of attempt murder without a specific finding of intent to kill. He urges that *People v. Trinkle* (1977), 68 Ill. 2d 198, 369 N.E.2d 888, controls and requires reversal. The State argues that *People v. Muir* (1977), 67 Ill. 2d 86, 365 N.E.2d 332, is controlling and that the instructions were correct.

This apparent conflict was resolved by the supreme court in the recent

decision of *People v. Harris* (1978), 72 Ill. 2d 16, 377 N.E.2d 28. The court there held:

> "* * * An instruction must make it clear that to convict for attempted murder nothing less than a criminal intent to kill must be shown.
>
> The part of the holding in *Muir* that an instruction was not erroneous which charged that proof only that a defendant knowingly and intentionally created a strong probability of death or great bodily harm to another person satisfies the intent element required for attempted murder was error and is hereby overruled.* * *" 72 Ill. 2d 16, 377 N.E.2d 28.

■■ The instructions in the instant case twice stated the requirement of intent to kill as an element of attempt murder. (IPI Criminal Nos. 6.05 and 6.07.) But the instruction which defined murder did not limit the mental state to intent to kill; it also defined the mental state required as, alternatively, intent to do great bodily harm, knowledge that the acts will cause death, or knowledge that the acts create a strong probability of death or great bodily harm. (IPI Criminal No. 7.01.) Judged by the standard established in *Harris*, this was erroneous.

The error in the instruction could not be cured by the correct instructions given in this case. (*People v. Trinkle* (1977), 68 Ill. 2d 198, 369 N.E.2d 888.) We therefore reverse the attempt murder conviction and remand for a new trial.

Since the case must be retried, the evidence question raised by defendant, which is likely to recur, will be considered.

Defendant contends that his arrest for these offenses was the direct result of evidence obtained as a result of a prior illegal arrest. The facts revealed during the hearing on the motion to quash arrest and suppress evidence must be stated. On August 4 a man was shot to death at 47th and Lake Park in Chicago. Chicago police officer Fashingbauer learned of the homicide on that or the next day through reading a police report prepared by someone else in the police department. That report mentioned the name "Willie Washington." Officer Fashingbauer knew defendant Willie Washington from his patrols of the vicinity of the homicide in the normal course of his duties. On August 8 Fashingbauer saw defendant in the vicinity of 47th and Lake Park and took him into custody for questioning about the homicide of August 4. Defendant was not questioned by Fashingbauer; that officer turned defendant over to two investigators. Fashingbauer neither took defendant's photograph nor asked anyone else to photograph defendant, nor was he present at any photographing of defendant. Defendant was photographed and was later released.

On August 11 the armed robbery and attempt murder which was the subject of this prosecution took place. On August 12 Fashingbauer read a

report of these crimes prepared by another member of the department, then went to the gas station and spoke to Lias, who provided a more complete description. Fashingbauer returned to the police station and secured nine photographs of black males. Included in this group of photographs was one of defendant that had been taken following his August 8 arrest. Fashingbauer showed these photographs to Lias and Lias identified the defendant's photograph as that of one of the offenders. Fashingbauer then arrested defendant when he was observed leaving a tavern. Lias picked defendant out of a lineup and the five other witnesses similarly identified defendant's photograph before trial.

The trial court ruled that the August 8 arrest was illegal, but that the subsequent photographic identifications were not tainted by the primary illegality. Defendant's motion to suppress the identification testimony was therefore denied.

■■ The narrow issue presented is whether, under the facts and circumstances of this case, defendant's identification by the victims and witnesses was the direct result of the exploitation of his allegedly illegal prior arrest. The State argues that the August 8 arrest was, in fact, based on probable cause and was not illegal; and that even if the August 8 arrest was illegal, the illegality did not taint the arrest and subsequent identification testimony of the instant prosecution.

It has been held that evidence obtained during or as a result of an illegal arrest may not be introduced during the prosecution of the offense for which that illegal arrest was effected. (*Davis v. Mississippi* (1969), 394 U.S. 721, 22 L. Ed. 2d 676, 89 S. Ct. 1394; *People v. Bean* (1970), 121 Ill. App. 2d 332, 257 N.E.2d 562; *People v. Riszowski* (1974), 22 Ill. App. 3d 741, 318 N.E.2d 10.) In other cases, evidence cannot be characterized as fruit of the poisonous tree merely because it would not have come to light "but for" the illegal actions of the police. (*Wong Sun v. United States* (1963), 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407; *Brown v. Illinois* (1975), 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254; *People v. Pettis* (1973), 12 Ill. App. 3d 123, 298 N.E.2d 372; *People v. Faulisi* (1977), 51 Ill. App. 3d 529, 366 NE.2d 1072; contra, *People v. Hornal* (1975), 29 Ill. App. 3d 308, 330 N.E.2d 225.) The correct standard to be applied is whether the evidence has been come at by exploitation of the illegality, or instead by means sufficiently distinguishable to be purged of the primary taint. (*Wong Sun.*) An important consideration in this analysis is the purpose and flagrancy of the official misconduct. *Brown v. Illinois; People v. Faulisi.*

We do not decide whether the August 8 arrest was illegal. Even if it were illegal, we find that the identification of defendant as the offender in the August 11 crimes did not result from exploitation of the illegality. The police officer who made the arrest on August 8 did so in pursuit of solving

the crime of August 4. The instant offense had not yet been committed, so the purpose of the police officer could not have been to gather evidence against defendant for the August 11 offenses. If the arrest of August 8 was illegal, it was not flagrantly so, for the officer had read defendant's name in the murder investigation report and arrested defendant in the vicinity of the murder scene the next time he saw the defendant. The arresting officer did not himself take photographs or ask that photographs be taken of defendant. Therefore, we cannot say that the arrest was prompted by a desire to obtain records and photographs of the defendant for police purposes, and we conclude that the identification of defendant was not secured by exploiting the illegality, if any, of the arrest. The evidence was properly admitted. *People v. Pettis* (1973), 12 Ill. App. 3d 123, 128, 298 N.E.2d 372, 376.

■■ Finally, defendant argues, and the State concedes, that his conviction and sentence for aggravated battery must be vacated, because aggravated battery is a lesser included offense in the crime of attempt murder, and both crimes arose from the single act of his accomplice's shooting of Thomas Tate. We agree *(People v. Lilly* (1974), 56 Ill. 2d 493, 309 N.E.2d 1; *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838; but because we have reversed the attempt murder conviction, we also reverse and remand the aggravated battery conviction so that both charges may be tried again with the jury properly instructed. The judgment of conviction and sentence of defendant for armed robbery remain undisturbed.

The convictions and sentences of defendant Washington for attempt murder and aggravated battery are reversed and remanded for a new trial consistent with the views expressed herein. In all other respects, the judgment of the circuit court of Cook County is affirmed.

Reversed and remanded in part; affirmed in part.

GOLDBERG, P. J., and McGLOON, J., concur.