THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
TOM DANGERFIELD, Defendant-Appellant.

First District (1st Division) No. 78-1495

Opinion filed November 19, 1979.

James J. Doherty, Public Defender, of Chicago (James L. Rhodes, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr and Joel A. Eisen-Stein, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

After a bench trial, Tom Dangerfield (defendant) was found guilty of robbery and burglary. He was sentenced to 2 to 6 years. He appeals.

The narrow issue presented is whether defendant's in-court identification by the victim of the crimes was predicated upon an independent source entirely separate from the primary illegality or was the result of exploitation of defendant's allegedly illegal prior arrest.

At a preliminary hearing on defendant's motion to quash arrest and suppress evidence, Investigator Ralph Sikorski testified that on the afternoon of July 18, 1977, he was called to investigate a robbery at 3434 North Lakewood. When Sikorski arrived at that address, he interviewed the victim of the robbery, Barbara West. She related that she was confronted by an offender in the hallway of the apartment building. He forced her into her apartment and robbed her. West's neighbor, Carolyn Golap, told Sikorski she had seen her friend, Raphael Flores, outside the apartment building at about 1:15 that afternoon. Golap subsequently

checked her own apartment and found someone had broken in and a television set belonging to West was missing from the apartment. Golap told the officer she believed Flores had burglarized her apartment.

Following information given to him, Officer Sikorski located Flores and placed him under arrest. Flores told the officer he and a man named "Newcombe" broke into Golap's apartment and later had gone to West's apartment to rob West. Flores described "Newcombe" as being in his late thirties, approximately 6 feet 2 inches tall, about 200 pounds, with a mustache, wearing a blue jean jacket and vest. Flores told Sikorski he would point out where "Newcombe" could be found.

After speaking with Flores, Officer Sikorski went back to see West and get her description of the man who had robbed her. She described the offender as "a black man, approximately 35 to 38 years of age, six foot, two in height, 200 pounds, with a mustache, who wore a blue jean jacket and blue jean vest, a hat, and sunglasses." Later, Flores directed the officer to 1719 North Larabee. There Flores pointed out an apartment on the second floor of the building where he said "Newcombe" could be found. The windows of the apartment were covered with aluminum foil.

In the evening, Officer Sikorski returned to this apartment building with two other police officers and tried to locate the apartment with the aluminum covered windows. The officers stopped at two different apartments before they arrived at apartment 1731A. Officer Sikorski knocked on the door and Velma McLauran opened it. Sikorski testified that McLauran admitted him into the apartment. When he asked her if "Newcombe" lived there, McLauran made no response but stepped back. Sikorski then heard footsteps on the second floor. Even though he did not have a warrant, he ran up the stairs to the second floor. He discovered the defendant and called him by the name "Newcombe." Defendant replied, " 'That's my nickname, my name's Tom Dangerfield.' " Sikorski placed defendant under arrest.

Velma McLauran, who is the defendant's sister, testified she did not admit the officers into the apartment or give them permission to come in. One of the officers heard something and passed by her to go upstairs. McLauran also testified that none of the windows in her apartment were covered with aluminum foil. She stated that the windows in the apartment next to hers on the left did have such a foil covering them. The trial court granted the defendant's motion to quash arrest and suppress evidence, including an oral statement by defendant and a lineup identification.

A bench trial was subsequently held. Barbara West testified for the State. At approximately 12:50 p.m. she heard the doorbell of her second floor apartment. She went downstairs to check the vestibule of the apartment building to see who rang the bell. Seeing nobody there, she

went back up the stairs. As she came to the top of the stairs, she saw a man approaching from the other direction. They were "face to face" in front of her apartment door. West testified that the man was a male Negro, 6 feet 2 inches tall, about 190-200 pounds, had a short afro and mustache, and was wearing blue jeans, blue jean jacket, blue jean vest, blue jean cap and sunglasses. He told West he was a police officer. She told him, "No, you're not" at which point he pushed her into the apartment.

In the apartment, the man removed his sunglasses. He was never out of West's sight for a 20-minute period. The lighting in the apartment was "bright." During this 20-minute period, West saw the man's face "numerous times" and conversed with him. He first demanded all of her money. She gave him the money from her purse. He then threatened to kill her if she did not give him more money. He took West into the bedroom where he told her to search through boxes and suitcases in her closet. The lighting in the bedroom was "daylight, so it was fairly bright." Several times he repeated his threats to kill her if she didn't find money to give him. She showed him boxes and suitcases she removed from the closet.

After 20 minutes, the man blindfolded West, tied her hands and placed her face down on the bed. She then heard him opening her drawers and going through more boxes. The apartment door opened and she heard him talking to someone else in the hallway. Over objection of defendant's counsel, West identified the defendant as the man who had robbed her. The trial court found defendant guilty of robbery and burglary.

In the instant case, we do not decide whether the arrest of defendant was legal. In our opinion, the issue of whether there was an independent source for the victim's in-court identification of defendant completely separate from the primary illegality of the arrest, is dispositive.

The only authority cited in defendant's brief is *People v. Bean* (1970), 121 Ill. App. 2d 332, 335, 257 N.E.2d 562. This case holds generally that where the initial arrest and search of defendant are illegal, "all subsequent identifications of defendant by the victim, including in-court identi-fication * * *" are tainted and not admissible. However, after the *Bean* decision, this court decided *People v. Pettis* (1973), 12 Ill. App. 3d 123, 298 N.E.2d 372. The *Pettis* opinion was written by Mr. Justice Burke who had dissented in *Bean*. We held in *Pettis* that the "but-for" test used in *Bean* "exceeds the mandate of the United States Supreme Court and the courts of this state." (*Pettis*, 12 Ill. App. 3d 123, 126.) In *Pettis*, we followed the holding of the Supreme Court in *Wong Sun v. United States* (1963), 371 U.S. 471, 487-88, 9 L. Ed. 2d 441, 455, 83 S. Ct. 407:

> "We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal

actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' "

This court has adhered to the above-quoted test on numerous occasions. See *People v. Myles* (1978), 62 Ill. App. 3d 931, 934-35, 379 N.E.2d 897, *appeal denied* (1978), 71 Ill. 2d 620; *People v. Washington* (1978), 60 Ill. App. 3d 662, 667, 377 N.E.2d 397, *appeal denied* (1978), 71 Ill. 2d 613; *People v. Faulisi* (1977), 51 Ill. App. 3d 529, 533-34, 366 N.E.2d 1072, *appeal denied* (1977), 66 Ill. 2d 640.

In the instant case, we assume that the alleged primary illegality is the arrest of the defendant. Subsequent to the arrest, West viewed defendant at a lineup, evidence of which was suppressed at trial. West also saw defendant during the preliminary hearing at which she heard her own name mentioned in connection with the defendant.

The trial court ruled that the arrest of defendant violated defendant's rights under the fourth amendment. However, the remaining issue as to whether the in-court identification of the defendant was proper in the situation here presented raises an entirely different matter pertaining to the right of the defendant to due process of law under the fifth amendment. Thus we must determine whether West's in-court identification of defendant was derived from exploitation of the primary fourth amendment illegality or by means sufficiently distinguishable from the arrest so as to be purged of the primary taint, thus protecting the fifth amendment rights of the defendant.

In *People v. Alexander* (1978), 65 Ill. App. 3d 559, 563, 382 N.E.2d 519, *appeal denied* (1979), 72 Ill. 2d 583, quoting from *People v. Jackson* (1974), 24 Ill. App. 3d 700, 705, 321 N.E.2d 420, the court ruled "[w]here there has been ample opportunity to observe the culprits at close range under good lighting and detailed descriptions of the culprits are given to police, * * * there is a sufficient independent origin to the in-court identification to render that identification admissible [citation]." In the instant case, the record shows Barbara West saw the defendant at extremely close range in "face to face" confrontation in the "very bright" hallway of the apartment building. After defendant pushed West into her apartment, she looked at him and conversed with him for 20 minutes. The lighting in the apartment was also "bright." She testified she saw defendant's face "numerous times" during the 20-minute period. After the crime and prior to any subsequent viewing of defendant, she gave a complete and accurate description of defendant and the clothes he was wearing "which necessarily could have come only from [her] keen observation of defendant at the scene." (*People v. Owens* (1976), 36 Ill.

App. 3d 1049, 1056, 344 N.E.2d 525, *appeal denied* (1976), 63 Ill. 2d 561, *cert. denied* (1977), 429 U.S. 1108, 51 L. Ed. 2d 562, 97 S. Ct. 1143.) The accuracy of West's description of defendant is corroborated by the fact that Raphael Flores, defendant's accomplice, gave an identical description of defendant and what he was wearing on the day of the crime. During her testimony, West's description of defendant did not vary from the description she gave Officer Sikorski immediately after the crime was committed.

When these facts are added to the clear and convincing character of the testimony of West, the conclusion is inevitable that the identification here is true, accurate and uninfluenced by any prior confrontations or illegality. Thus, it is our opinion that West's in-court identification of defendant had a sufficient independent source arising from her observation of the defendant during the commission of the crime so distinguishable from any primary illegality of defendant's arrest as to purge this original taint.

Accordingly, the judgment of the circuit court is affirmed.

Judgment affirmed.

McGLOON and CAMPBELL, JJ., concur.