(No. 42777.—

THE PEOPLE *ex rel.* Lowell J. Myers, on behalf of Donald Lang, Appellant, *vs.* JOHN F. BRIGGS, Director of the Department of Mental Health, Appellee.

*Opinion filed September 29, 1970.*

WARD, J., took no part.

LOWELL J. MYERS, of Chicago, appointed by the court, for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, (JAMES B. ZAGEL, Assistant Attorney General, of counsel,) for the People.

Mr. JUSTICE BURT delivered the opinion of the court:

The appellant, Donald Lang, an illiterate deaf-mute, herein referred to as defendant, was indicted on December 9, 1965, in the circuit court of Cook County on a charge of murder of a woman in Chicago on November 12, 1965. On December 15, 1965, the Public Defender was appointed to represent the defendant and an order was entered directing that he be examined by the Behavior Clinic of Cook County. He does not know any recognized sign language.

On January 5, 1966, Attorney Lowell J. Myers moved that he be appointed by the court to represent the defendant. Myers has had 30 years of experience in dealing with deaf-mute people and 10 years of experience in representing deaf-mute people in legal matters. (See, *Myers* v. *County of Cook,* 34 Ill.2d 541.) The trial judge appointed Myers to represent the defendant and granted leave to the Public Defender to withdraw as his attorney.

The Behavior Clinic was directed to make a further investigation and the case was continued to January 20, 1966. On that date the defendant's attorney filed a petition requesting a hearing before a jury on the question of the defendant's physical competence to stand trial. At that hearing the defendant's attorney testified as to his own experience in representing deaf-mutes and his inability to communicate with the defendant; stated that the defendant did not know the charges against him, and that he was unable to communicate with the defendant. Dr. William H. Haines, Di-

rector of the Behavior Clinic, testified that he was unable to communicate with the defendant and he diagnosed the defendant's case as "mutism." He testified also that in his opinion the defendant did not know the nature of the charge against him, and was unable to co-operate with his counsel. The defendant's attorney then tendered a directed verdict finding that the defendant "was at the time of impaneling this jury and is now physically incompetent to stand trial." The court directed the jury to return that verdict and the case was continued.

On February 21, 1966, the prosecution requested the entry of an order for examination of the defendant to which the defendant's present attorney objected because of his view that he was being denied the right to be present during the examination. Defendant appealed from the order allowing the examination to this court and the contention was denied. *People* v. *Lang* (March, 1967), 37 Ill.2d 75.

On March 16 the defendant's attorney presented several motions. His motion that the indictment be dismissed because more than 120 days had elapsed since the defendant's arrest was denied. His motion that judgment be entered upon the verdict of the jury which was returned January 20, 1966, as to physical competency to stand trial was not acted upon, but was "held in abeyance." His motion that the defendant be placed on trial for murder recited that "the defendant offers to waive his constitutional rights, and his legal rights, and the verdict of the jury made on January 20, 1966, that he is physically incapable of standing trial; and in order to obtain his liberty, offers to stand trial on a charge of murder, and here and now demands to be tried for murder in accordance with the indictment in this case." This motion was denied.

On March 31, 1966, the court granted the request of the State's Attorney that a jury be impaneled to inquire into the mental competency of the defendant. At the hearing the jury heard the testimony of Dr. Haines and Dr.

Hellman R. Myklebust, Director of the Institute of Language Disorders of Northwestern University, Lowell J. Myers, the defendant's brother, stepmother, and a life-long friend of the defendant. The jury returned a verdict finding defendant mentally incompetent. Judgment was entered on that verdict and also on the earlier verdict finding the defendant physically incompetent.

On September 8, 1969, defendant filed in the circuit court of Cook County a petition for *habeas corpus* which was denied on motion to dismiss on September 30, 1969, with prejudice, and from this order appeal was taken directly to this court on the ground that constitutional issues and *habeas corpus* were involved.

Petitioner contends that *habeas corpus* is an appropriate remedy in this situation, citing paragraph 2 of section 22 of the Habeas Corpus Act: "Where, though the original imprisonment was lawful, yet, by some act, omission or event which has subsequently taken place, the party has become entitled to his discharge." Ill. Rev. Stat. 1969, ch. 65, par. 22.

The petitioner was committed to the Department on May 19, 1967, under court order. Two years later on May 7, 1969, the superintendent of the institution in which the defendant is confined by the Department of Mental Health, at Dixon State School, wrote a letter to Jerome Goldberg, Special Counsel to the Department of Mental Health reporting on the status of Donald Lang as follows:

"Dear Mr. Goldberg:
Based on our experience with Donald Lang, it now appears that he will never acquire the necessary communication skills needed to participate and cooperate in his trial. He has rejected all of our efforts to instruct him and has refused to participate and cooperate with his instructor. The probability for his acquiring the necessary communication skills at any future date is unlikely. However, it is our impression that Donald is functioning

at a nearly normal level of performance in areas other than communication. He is capable of fairly complex operations which would tend to support our opinions concerning his over-all abilities.

Since Donald's commitment to the Department of Mental Health is based on physical and mental incompetence and the probability of appropriate functioning in the former area is doubtful, we wonder if you would consider contacting Donald's lawyer in order that appropriate legal action be initiated. Reviewing his lawyer's previous correspondence, it would seem that if his case came to court, sufficient evidence could be produced which would clear him of all charges.

In regard to a home visit, it is our feeling that if one of Donald's brothers assume the responsibility of supervising him in the community, we will consider this after re-evaluating his current adjustment and behavior.

It is apparent now that Donald's future must be decided in a court of law. He will not be able to communicate even in the limited sense as we had first anticipated.

Please contact me if you require additional information.
Very truly yours,

David Edelson
Superintendent"

Petitioner contends that this letter, or report of evaluation, constitutes an "act * * * or event which has subsequently taken place * * *." We agree. If the act is thus broadly construed, the petitioner has available this writ of *habeas corpus,* but if we construe the language of the act narrowly we would perhaps be doing an injustice to this defendant under the circumstances of this case.

The State contends that the proper remedy for the defendant is to seek restoration to competency under the pro-

visions of the Code of Criminal Procedure of 1963 as amended. (Ill. Rev. Stat. 1969, ch. 38, sec. 104—3(b).) To this the attorney for the petitioner replies that he could not file a petition for recovery honestly because he could not state that there had been any change of status of the petitioner's incompetence.

Defendant is now confined at Dixon State School. A special program was set up to teach him sign language so that he would be able to communicate, but apparently the defendant is not learning and the department believes that is because he does not wish to learn. There is no allegation or intimation that this defendant is in fact "insane" so that any criminal proceedings against him would be void. *People* v. *Anderson*, 31 Ill.2d 262.

In the case at bar, the petitioner argues that in this case Donald Lang may be incompetent because of a defect in his brain which would cause him to be technically mentally incompetent in the area of speech but nowhere else.

We agree that it is frequently difficult, if not impossible to distinguish between physical and mental or psychological handicaps.

Petitioner further argues that a deaf-mute cannot be imprisoned for life because he is merely accused of a criminal offense, without ever being given a trial, and without ever being convicted. *Klopfer* v. *North Carolina* (1967), 386 U.S. 213, 18 L. Ed. 2d 1, 87 S. Ct. 988; *Washington* v. *Texas* (1967), 388 U.S. 14, 18 L. Ed. 2d 1019, 87 S. Ct. 1920; *In re Gault* (1967), 387 U.S. 1, 18 L. Ed. 2d 527, 87 S. Ct. 1428.

In the *Klopfer* case, the United States Supreme Court held that it was a violation of the principle of fundamental fairness to postpone indefinitely the prosecution of a criminal action which would violate the provisions of the sixth and fourteenth amendments, and the court disapproved of the practice in North Carolina of allowing the State to *nolle prosse* a criminal complaint with leave to reinstate at an

indefinite time in the future. The court held that the defendant was entitled to clear his name and his record even though the State did not wish to proceed.

The general rule in handling the trial of a criminal defendant who is handicapped by deafness, blindness or other affliction is that a trial judge should afford such a defendant reasonable facilities for confronting and cross-examining the witnesses as the circumstances will permit. He need only give such aid to intelligent appreciation of the proceeding as a sound discretion may suggest. The fact of blindness or deafness of the accused may lessen the ability and capacity of the defendant to utilize his constitutional rights, but this will not prevent his being subject to trial. In the proper administration of justice, however, the court should give a person accused of crime a reasonable opportunity to obtain the benefit of his constitutional rights. If he is deaf, such opportunity as may be necessary should be allowed for communication to him of the testimony of the witnesses to insure him a full and fair exercise of his legal rights. The exact manner in which this result should be arrived at must depend on the circumstances of the case and, to a considerable extent, be left to the sound discretion of the court. 14 Am. Jur., § 181, p. 892.

Although the facts in this case are unique in American jurisprudence (80 A.L.R. 2d 1084; 21 Am. Jur. 2d 338) there is an English case, *Regina* v. *Roberts* (1953), 2 All England Reports 340, in which the court dealt with a similar situation. There the defendant was indicted for murder, stood mute on being arraigned and was found by a jury to be mute by the visitation of God, having been deaf and dumb from birth. The Crown submitted that the issue whether or not he was fit to plead should be tried before the general issue, while the defense submitted that the general issue should be tried first. The court held that if counsel for the defense thought he could properly obtain for the defendant a verdict of not guilty he was entitled to

require that the general issue should be tried and that it should also be left for the jury the question whether the defendant was fit to plead. The indictment was read and a plea of not guilty was entered by direction of the judge. The cause then proceeded and the trial resulted in a directed verdict for the defendant. The court in that case stated that the defendant could not be kept in Broadmoor Mental Hospital without a trial on the criminal charge because this "might result in the grave injustice of detaining as a criminal lunatic a man who was innocent  *  *  *."

This court is of the opinion that this defendant, handicapped as he is and facing an indefinite commitment because of the pending indictment against him, should be given an opportunity to obtain a trial to determine whether or not he is guilty as charged or should be released.

Therefore, the order of the circuit court is reversed and the cause remanded with directions to re-instate this case and proceed to trial of the pending indictment against this defendant Donald Lang; that Lowell J. Myers be continued as attorney for this defendant for trial; that the defendant be arraigned, and that the trial of this case be expedited in the circuit court.

*Reversed and remanded, with directions.*

Mr. JUSTICE WARD took no part in the consideration or decision of this case.