THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIAM EARL, Defendant-Appellant.

First District (1st Division)   No. 78-974

Opinion filed October 29, 1979.

Ralph Ruebner and Kenneth L. Jones, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Paul C. Gridelli, and Terrence M. Burns, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

The defendant, William Earl, was charged by indictment with the offenses of armed robbery and aggravated battery. (Ill. Rev. Stat. 1975, ch. 38, pars. 18—2, 12—4, 12—4(b)(1).) A jury found defendant guilty of

both offenses and the trial court sentenced him to a term of 1 to 3 years on the aggravated battery conviction and 4 to 12 years on the armed robbery conviction, the sentences to be served concurrently. Defendant appeals from these convictions, contending that his sixth amendment right to counsel was violated by the admission at trial of testimony concerning a pretrial lineup identification.

Prior to trial, defendant moved to suppress testimony of the complaining witness, Jose Narvaez, concerning his identification of defendant at a pretrial lineup conducted on January 13, 1977. At the hearing on this motion, defendant testified that on December 27, 1976, he was arrested on an unlawful use of weapons (hereinafter UUW) charge which was unrelated to the instant prosecution. Defendant indicated that the preliminary hearing on this charge was held on December 28, 1976, and that he was arraigned on the UUW charge on January 16 or 17, 1977. On January 13, 1977, defendant was taken from the Cook County jail to participate in the aforesaid lineup. At that lineup, defendant was informed that he could pick any spot he wanted to stand in and defendant then chose the third position. Defendant stated that he did not have an attorney representing him at the time of the lineup concerning the present charges and that he was not informed by any police official during the lineup that he was entitled to have an attorney represent him.

Defendant, as well as the other five men in the lineup, was required to step forward, starting with the person in the first spot, and give his name and address. According to defendant, this procedure was repeated two more times before he was returned to the county jail. Defendant further testified that during the lineup he heard the following remarks: "[T]hat isn't the gentleman. Right there, that is him." However, defendant said he did not know who made this statement. On cross-examination, defendant admitted that, while an attorney had been appointed to represent him on the UUW charge, he did not request to speak to that attorney when he was placed in the lineup.

After hearing the arguments of the parties, the trial court entered a finding that there was no violation of defendant's right to counsel at the lineup, but denied the State's motion for a directed finding on the issue of whether the lineup was suggestive.

Police Officer Ronald Pluta then testified for the prosecution as to the procedure employed in conducting this lineup. Pluta stated that he and Investigator Trotta conducted the lineup on January 13, 1977, at the Cook County Correctional Facility located at 26th and California Avenue, in Chicago. Officer Pluta's description of the lineup was essentially the same as that given by defendant, except that he stated there was nothing said by the complainant or by anyone else in the viewing room while the lineup was conducted. He further testified that he and his partner

conducted only one lineup that day and that the complainant identified defendant from the lineup as the person who had robbed and beat him on December 5, 1976.

On cross-examination, Officer Pluta stated that subsequent to this lineup a victim of an unrelated crime viewed the same six men. After hearing this testimony, the court found that the lineup was not suggestive and denied defendant's motion to suppress.

At trial, the complaining witness testified that at approximately 2 p.m. on December 5, 1976, he was returning home from a restaurant with his wife; as they were entering their apartment at 2239 North Sawyer Avenue, in Chicago, complainant saw two people in the hallway, one of whom he had observed previously in the building; that defendant was this person; that shortly thereafter complainant left his apartment to go to the basement of the building to repair a broken washing machine and to do his laundry; that as he worked on the broken machine the two men whom he had just passed in the hallway approached him; that defendant's accomplice was carrying a lead pipe and that this individual said, "Give me your money"; and that defendant then pushed the complaining witness onto his side and into a wash basin and stated, "Shut up or I will kill you." The first assailant, still carrying the pipe in his hand, then took complainant's wallet, which contained approximately $150, while defendant held him. This individual then demanded more money and inquired of complainant whether he had any additional cash in his apartment. At this time, however, complainant was able to free one of his hands and started to struggle with defendant. The accomplice struck complainant on the arm with the pipe and defendant then directed his companion to "hit him in the head." In response to this command, the first assailant struck complainant several times on the head. After the attack the complaining witness was in a daze, but was able to observe his two assailants running out the back door. Complainant managed to return to his apartment, where his wife wrapped his head in a towel. She then went for help and returned shortly thereafter with a neighbor who, in turn, drove complaining witness to a hospital.

On December 9, 1976, while complainant was recuperating at his father's house, he was visited by Pluta and Trotta. Without objection, complainant testified that the investigators showed him five pictures, from which he identified defendant as one of the two men who had assaulted him on December 5, 1976.

Fernando Serrano also testified for the prosecution and stated that at approximately 2:30 p.m. on the date in question, he was waiting in his automobile behind the complainant's building for the complainant's brother Misael. At this time he observed two individuals running from the back of that building. In describing these two, he indicated that "[o]ne

was tall, about five ten, five eleven, wearing an army, green army field jacket and a ski hat, dark trousers"; the second man was shorter than the first, "about five five, five six, wearing a black cashmere coat, no hat." Serrano further testified that he had observed these two individuals before at that address and in the neighborhood and stated that defendant was the taller of the two.

Misael Narvaez, complainant's brother, testified that on the aforesaid date he lived in the same building as his brother; that at approximately 2 p.m. he and his wife and child were leaving their apartment to go shopping; that, as they were leaving the building, he observed two men whom he had seen at that location several times before and whom he believed lived in the building; and that these two individuals were entering his brother's building at the time. This witness then gave substantially the same description of defendant as did the complainant and Fernando Serrano and indicated that defendant was the taller of the two men he observed. Misael Narvaez further testified that when he returned home later that afternoon a neighbor told him about his brother's condition; that he immediately went to the hospital and stayed with his brother for approximately 45 minutes; and that, after returning home, he was visited by two police officers who questioned him about the incident. The police then asked him to go with them to the Lindsey apartment on the first floor. He stated that the police asked the occupants of the Lindsey apartment some questions and then asked him whether one of the residents of this apartment was one of the two individuals he saw entering the building earlier that day. The witness indicated that this individual was not one of the two, and he was then allowed to return to his apartment.

Misael Narvaez further testified that on December 9, 1976, while he was visiting his brother at his father's house, two police officers came to that location to speak with the complaining witness. Misael was in the kitchen while the police spoke to his brother in the living room. After speaking with the complaining witness, Misael Narvaez stated, without objection, that the police then asked him to look at some photographs. From this group of pictures, he identified defendant as one of the men he saw entering his building on December 5, 1976.

Police Officer Ronald Grczeskiewcz testified that at approximately midafternoon on December 5, 1976, he was dispatched to the complaining witness' building; that there was a large crowd of people on the street in front of the building; that he spoke to some of the people on the street; and that one individual gave a description of one of the persons involved in the beating and robbery of the complaining witness. Officer Grczeskiewcz then went to the rear entrance of complainant's building and proceeded to the basement. The basement door was ajar and, as he

approached, he noticed a piece of pipe lying on the ground to the right of the door. Officer Grczeskiewcz stated that the pipe appeared to have fresh blood on it. He then searched the basement but did not find anything. He did observe, however, that a washing machine was pulled away from the wall and that there was a wash basin immediately behind that machine. Officer Grczeskiewcz further testified that he then proceeded to the hospital to interview the complaining witness; that after receiving permission to speak with complainant he interviewed him; and at this time complainant had a large laceration on his head and was bleeding profusely. Officer Grczeskiewcz related that complainant indicated that two men had robbed him and described one of his assailants in the following manner: a male Negro, approximately 5 feet 6 to 5 feet 8 in height, weighing about 150 pounds and having a dark complexion. Complainant also stated he had seen this individual previously at his address.

As stated above, defendant contends that, since he was not informed of his right to counsel at the aforesaid lineup, his sixth amendment rights were violated by the admission of testimony at trial concerning the lineup identification. We cannot agree with this contention.

■■ We note at the outset that defendant's written post-trial motion for a new trial did not raise any issue concerning pretrial identification testimony, as required by section 116—1(b), (c) of the Code of Criminal Procedure (Ill. Rev. Stat. 1977, ch. 38, par. 116—1(b), (c)). Accordingly, these contentions are deemed to have been waived. *People v. Fisher* (1973), 9 Ill. App. 3d 958, 960-61, 293 N.E.2d 355. See also *People v. Irwin* (1965), 32 Ill. 2d 441, 443, 207 N.E.2d 76.

■■ ■ Nevertheless, we have examined defendant's contention and have found it to be without merit. It has been firmly established that a person's sixth and fourteenth amendment right to counsel attaches only at or after the time adversary judicial proceedings have been initiated against him. Such adversary proceedings may be initiated by way of a formal charge, preliminary hearing, indictment, information or arraignment. (*Kirby v. Illinois* (1972), 406 U.S. 682, 688-89, 32 L. Ed. 2d 411, 417, 92 S. Ct. 1877, 1881-82; *People v. Burbank* (1972), 53 Ill. 2d 261, 271-72, 291 N.E.2d 161.) Defendant was arrested on an UUW charge on December 27, 1976, and a preliminary hearing relevant to this charge took place on December 28, 1976. Thereafter, defendant was held in Cook County jail pending his arraignment. During this period two police officers, who were conducting an investigation of the armed robbery and aggravated battery in question, took defendant from the county jail so that he could participate in a lineup. The lineup took place on January 13, 1977, during which the complaining witness identified defendant as one of the two persons who had robbed and beat him on December 5, 1976. The indictment, charging defendant with the offenses of armed robbery and aggravated battery,

was returned on January 17, 1977. Moreover, defendant had not yet been arrested for these two offenses when this lineup was conducted and, while counsel had been appointed to represent him for the UUW charge, defendant did not ask to have his attorney present at the lineup. In view of these facts, it is evident that in the instant matter adversary criminal proceedings relevant to the armed robbery or aggravated battery offenses had not been initiated against defendant when he took part in the lineup. Accordingly, the right to counsel did not attach prior to the lineup. *People v. Santiago* (1977), 53 Ill. App. 3d 964, 968, 369 N.E.2d 125.

Defendant argues that, since he had been charged with an unrelated offense and since a preliminary hearing relevant to that offense had been held and an attorney had been appointed to represent him, he should have been advised of his right to counsel at the time the lineup was conducted. In support of this contention, defendant cites *United States ex rel. Sanders v. Rowe* (N.D. Ill. 1978), 460 F. Supp. 1128. However, defendant's reliance on *Sanders* is misplaced since that case holds in part that a defendant's sixth amendment right to counsel during government interrogation, not an identification procedure, attaches only after the commencement of adversary proceedings against defendant. Moreover, it has been held that, under *Kirby*, only those identification confrontations which occur after the defendant has been formally charged with the offense for which the identification testimony is sought, require the presence of counsel. *Sanchell v. Parratt* (8th Cir. 1976), 530 F.2d 286, 290 n.2; accord, *United States v. Derring* (8th Cir. 1979), 592 F.2d 1003, 1006 n.4.

The evidence against defendant was overwhelming. The complaining witness testified that he observed defendant and his accomplice in the hallway of his building shortly before the offenses took place and that he had seen defendant before the occurrence. The evidence also showed complainant had ample time to observe defendant when the attack occurred. Moreover, defendant was seen by other witnesses entering and then fleeing from complainant's building about the time of the attack. If any error did occur in not having counsel for defendant at the lineup, such error was harmless beyond a reasonable doubt. (*Chapman v. California* (1967), 386 U.S. 18, 21-24, 17 L. Ed. 2d 705, 709-11, 87 S. Ct. 824, 826-27; *People v. McDonald* (1975), 62 Ill. 2d 448, 453-54, 343 N.E.2d 489.) Further, there is no contention by defendant on appeal that the identification procedure was unduly suggestive or resulted in a misidentification.

The convictions and sentences are affirmed.

Affirmed.

McGLOON and CAMPBELL, JJ., concur.