THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ANDRE LOUIS AGEE, Defendant-Appellant.

First District (4th Division)    No. 80-69

Opinion filed September 24, 1981.

Frederick F. Cohn, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr, Mike Bradley, and Casimir J. Bartnik, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LINN delivered the opinion of the court:

Following a bench trial, defendant was convicted of robbery and sentenced to a term of 5 years in the Illinois Department of Corrections (Ill. Rev. Stat. 1977, ch. 38, pars. 18—1 and 1005—8—1(5)); the sentence was to run concurrently with another sentence previously imposed in an unrelated prosecution. The issues presented are (1) whether defendant's arrest was unlawful, tainting the subsequent lineup identification of him and rendering it inadmissible; (2) whether the victim's identification of defendant is insufficient to sustain a conviction; and (3) whether defendant was denied a fair suppression hearing by the trial court's refusal to call the victim as a court's witness.

We affirm.

*Factual Background*

The victim, Terrence Shields, was a cab driver. He was robbed on Sunday, August 6, 1978, at 1:30 a.m. in the area of Division and Noble in Chicago by his two passengers. The principal issue at trial was the accuracy of Shields' identification of defendant as one of his assailants.

Shields testified that defendant and another man hailed his cab on Division Street between State and Dearborn and directed him to drive to an address near Division and Noble. The trip took about 15 minutes, during which time Shields observed defendant, who was on the right

hand side of the back seat, both by turning around to converse with him and by looking at his reflection in the rear view mirror. When Shields stopped at the requested destination, defendant put a stranglehold on him from the back seat. Defendant's companion, who had previously gotten out of the taxi, reached through the open window next to Shields and took his watch, change pouch and the money out of his wallet and shirt pocket. Throughout the robbery the vehicle dome light was on and Shields again looked at both men. One of the men then said he had a gun, and he ordered Shields to drive away. Shields complied, and he observed the men walk away into a nearby housing area as he left.

On August 29, 1978, two police investigators showed Shields five photographs, and he made a positive identification of defendant as one of the robbers, but he requested that he be allowed to see defendant in person in order to be absolutely certain in his accusation. The next day Shields viewed a lineup at the police station, where he made a positive identification of defendant.

Defendant denied robbing Shields but did not recall his whereabouts on the night of August 5, or the morning of August 6, 1978. He admitted, however, that he was living with his grandmother at Burling and Division and often visited his mother, who lived at Milwaukee and Noble in Chicago.

At the suppression hearing, defendant argued that his arrest was illegal, tainting the resultant lineup identification; that he was held for the lineup without being taken before a judge in violation of section 109—1 of the Code of Criminal Procedure (Ill. Rev. Stat. 1977, ch. 38, par. 109—1); and that at the time of the lineup formal adversarial judicial proceedings had commenced against him and he therefore had, but was denied, his sixth amendment right to counsel (U.S. Const., amend VI). Following an evidentiary hearing, the trial court found that defendant was properly in police custody at the time of the lineup, that no formal proceedings had commenced and defendant had no right to counsel, and that securing a lineup identification of defendant as a robbery suspect prior to taking him before a judge did not violate the Code of Criminal Procedure of 1963.

The following events preceded the lineup and in substantial part form the basis of this appeal. On August 30, 1978, defendant was on trial in the Maybrook courthouse for an unrelated criminal charge. Two Chicago Police Department investigators arrived at the courtroom to secure defendant's presence at a lineup in conjunction with the Shields' robbery. The jury was deliberating, and the prosecutor wanted to avoid anything that might have precipitated a mistrial, so he requested that the officers not take custody of defendant until after the verdict was announced. When the jury returned a guilty verdict, the presiding judge revoked

defendant's bond and remanded him to the custody of the Cook County sheriff for transport to Cook County jail pending the sentencing hearing. The deputy confined defendant in the Maybrook courthouse lockup while awaiting defendant's transportation to Cook County jail. At that point, the Chicago police investigators received authorization from the Cook County sheriff's supervisor to take defendant to Area 4 Headquarters for the lineup, with the understanding that the officers would subsequently personally transport defendant to the Cook County jail. Three Cook County deputies testified that they would not release anyone in their custody to the police without a supervisor's authority, and a fourth deputy testified that he was ordered to turn defendant over to the investigators by his superior. At the time of the hearing the supervisor referred to was deceased. There was no specific regulation or statute authorizing the transfer of custody, only a general understanding that the sheriff's office should cooperate with other police departments.

OPINION

Defendant's argument is that the supervisor's authorization to transfer custody of him to the Chicago police was in violation of the trial court's order directing the Cook County sheriff to take custody of him and to transport him to Cook County jail. Defendant posits that the proper procedure would have been for the police officers to secure a custody order from the judge who presided at the trial. Defendant reasons that he then would have been at the lineup pursuant to court order and would have had a constitutional right to be represented by counsel.

■■ We find no authority to substantiate defendant's contention that the Cook County sheriff's supervisor violated the trial court's order or that the police investigators were required to obtain a custody order from the presiding judge. Nor do we agree that if the order had been issued by the trial judge that that would have constituted the initiation of an adversary judicial proceeding against defendant. Arrest warrants are, in fact, issued by judges, and the fact that a defendant is placed in a lineup after an arrest pursuant to a warrant does not alone institute a formal judicial proceeding.

■■ The right to counsel does not attach until after the initiation of adversary judicial proceedings against an accused. The pre-indictment lineup was not a critical stage of a criminal prosecution, and defendant did not have a constitutional right to counsel at that time. (*Kirby v. Illinois* (1972), 406 U.S. 682, 690, 32 L. Ed. 2d 411, 92 S. Ct. 1877; *People v. Burbank* (1972), 53 Ill. 2d 261, 271-72, 291 N.E.2d 161.) Nor did such a right to counsel arise merely because at the time the lineup was held, defendant was in custody on an unrelated criminal matter. The lineup

identification was not used in the earlier case, and the State had not initiated a formal prosecution against him in connection with the Shields' robbery. *United States v. Tyler* (5th Cir. 1979), 592 F.2d 261, 263.

■■ Similarly, defendant did not have a right to counsel merely because charges were subsequently brought against him. The police investigators clearly had probable cause to make a warrantless arrest of defendant based upon Shields' positive photographic identification. (Ill. Rev. Stat. 1979, ch. 38, par. 107—2(c); *People v. Richmond* (1980), 84 Ill. App. 3d 1017, 1020, 406 N.E.2d 135; *People v. McClinton* (1978), 59 Ill. App. 3d 168, 175, 375 N.E.2d 1342; *People v. Henderson* (1974), 20 Ill. App. 3d 120, 123, 312 N.E.2d 655.) A warrantless arrest made on probable cause, even though defendant was subsequently charged, did not initiate adversary judicial proceedings giving rise to a right to counsel at the pre-indictment lineup. See *Caver v. Alabama* (5th Cir. 1978), 577 F.2d 1188, 1195.

Even assuming *arguendo* that the lineup identification should have been suppressed, that would not have affected the admissibility of Shields' in-court identification of defendant. This court has established that Illinois has no *per se* rule of exclusion of identification evidence following a faulty arrest or lineup. (*People v. Dangerfield* (1979), 78 Ill. App. 3d 1046, 1048-49, 398 N.E.2d 57.) The test of admissibility is whether the in-court identification has an independent origin arising from other uninfluenced observations of the defendant. *Dangerfield*, at 1049-50; see *People v. Faulisi* (1977), 51 Ill. App. 3d 529, 533-34, 366 N.E.2d 1072; *People v. Stinson* (1976), 37 Ill. App. 3d 229, 235, 345 N.E.2d 751.

The Supreme Court in *United States v. Crews* (1980), 445 U.S. 463, 477, 63 L. Ed. 2d 537, 549-50, 100 S. Ct. 1244, 1252-53, recently held that an in-court identification does not necessarily have to be suppressed as the fruit of defendant's unlawful arrest if the identity of the witnesses and their presence in the courtroom are not secured as a result of defendant's unlawful arrest, and the witnesses had the ability to identify the defendant before the unlawful arrest; that is, the evidence or ability to identify defendant was in existence prior to any police misconduct. The court also stated, with respect to trial after an unlawful arrest, a defendant "cannot claim immunity from prosecution simply because his appearance in court was precipitated by an unlawful arrest. An illegal arrest, without more, has never been viewed as a bar to subsequent prosecution * * *." 445 U.S. 463, 474, 63 L. Ed. 2d 537, 547, 100 S. Ct. 1244, 1251.

■■ In this case Shields observed defendant for over 15 minutes at close proximity from the front seat of his cab and in his rear view mirror and the dome light was on during the robbery. The trial court found that Shields had ample opportunity to observe defendant and make a correct identification. Further, it was the trial court's impression that Shields'

in-court identification was without equivocation or hesitation. Hence, the in-court identification was made independently of the lineup identification and was admissible.

■■ Defendant's next argument is that Shields' identification of him is insufficient to sustain a conviction because he testified that, after making the positive photographic identification of defendant, he requested the opportunity to see defendant in person to affirm his identification. As set forth above, the trial court found that Shields had ample opportunity to observe his assailants and he made an unequivocal identification of defendant. Therefore, Shields' testimony is adequate to support the conviction. *People v. Manion* (1977), 67 Ill. 2d 564, 578, 367 N.E.2d 1313, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513; *People v. Jones* (1980), 82 Ill. App. 3d 386, 401, 402 N.E.2d 746; *People v. Bristow* (1980), 80 Ill. App. 3d 535, 538, 400 N.E.2d 511.

■■ Defendant also argues that Shields' in-court identification of him is unreliable because prior to trial, defense counsel showed Shields a photograph of three black males and asked him to put an "X" over the one who looked like defendant. Shields testified that although he had doubt that any of them was defendant, at counsel's behest he placed an "X" over the man who looked similar to defendant. Defendant claims that Shields' uncertainty as to whether the person over whom he placed an "X" was defendant negates his identification testimony. We find this argument unpersuasive in view of the fact that none of the three men in the photograph was, in fact, defendant and Shields was told to select the man who looked like defendant.

Defendant's final contention is that he was denied a fair hearing on his motion to suppress the lineup identification. Defendant called Shields as a witness and attempted to discredit his initial photographic identification by eliciting an admission that Shields erroneously identified defendant in the photograph of the three black men shown him by the defense attorney. Shields' testimony was that he said the man in the photograph looked like, but was not, defendant. Defendant moved to have Shields called as a court's witness so he could cross-examine him. Defense counsel made an offer of proof that Shields initially identified defendant in the photograph and later said he only resembled defendant.

■■ The court declined to call Shields as a court's witness, but took note of the discrepancy. The trial court clearly considered the conflicting testimony in assessing Shields' credibility as an identification witness. Determination of the credibility of the witnesses and the weight to be given their testimony is strictly within the purview of the trier of fact. On review, we will not substitute our judgment for that of the trial court who had the opportunity to observe the demeanor of the witnesses. *People v.*

*Manion* (1977), 67 Ill. 2d 564, 578, 367 N.E.2d 1313, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513; *People v. Cazares* (1980), 86 Ill. App. 3d 612, 615, 408 N.E.2d 258.

Accordingly, for the reasons noted, the judgment of the circuit court is affirmed.

Affirmed.

ROMITI, P. J., and JOHNSON, J., concur.