THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LARRY BRANSON, Defendant-Appellant.

First District (1st Division)   No. 83—1443

Opinion filed December 31, 1984.—Rehearing denied February 21, 1985.

Barbara Kamm, of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Richard A. Stevens, Assistant State's Attorney, of counsel), for the People.

JUSTICE O'CONNOR delivered the opinion of the court:

After a jury trial in the circuit court of Cook County, Larry Branson was found guilty of armed robbery (Ill. Rev. Stat. 1983, ch. 38, par. 18—2) and sentenced to 15 years in prison.

On appeal, defendant contends: (1) the trial court erred in not suppressing a pretrial lineup identification allegedly made in violation of defendant's sixth amendment right to counsel; (2) the trial court denied defendant's right to be present at trial and assist in his own defense by failing to take reasonable measures to insure that defendant could hear the proceedings; and (3) the trial court abused its discretion when it refused to appoint experts to examine defendant and when it failed to order a hearing to determine defendant's fitness to stand trial.

At about 10:30 p.m. on September 21, 1982, complainant Vickie Shinner was robbed at knifepoint by a man who took her purse containing money, a packet of photographs of·her friends, her checkbook with a check cashing card and her wallet.

On September 23, 1982, two days after the Shinner robbery, at approximately 10:45 p.m., defendant and a white woman and another black man were arrested at 1164 North Clark Street in Chicago.

Defendant was charged with theft from person for stealing seven dollars from a Chicago police officer. (Ill. Rev. Stat. 1983, ch. 38, par. 16—1.) A custodial search of the three persons revealed that defendant was carrying the photographs of Vickie Shinner's friends which had been in her purse on the night that she was robbed. Complainant's checkbook and check cashing card were found on the woman arrested with defendant.

The next day, while in custody and represented by counsel on the theft charge, defendant was transported to the Area Six police station so he could appear in a lineup conducted as a result of the robbery investigation. At approximately 4:20 p.m., defendant was placed in a lineup with four other black men who were between the ages of 25 and 40, of medium build, ranging in height from 5 feet 10 inches to 6 feet 1 inch and all with some degree of facial hair. At the time of the lineup, defendant had not yet been charged with the Shinner robbery, but after Vickie Shinner picked defendant out of the lineup, he was then charged with armed robbery in the instant case.

Defendant filed a pretrial motion to suppress the identification. There was some question at the pretrial hearing on the motion regarding whether defendant had requested that his attorney be present at the lineup and whether his attorney had been notified of the lineup. At the suppression hearing, defendant testified that he asked police officers to contact his attorney prior to his being placed in the lineup. He also testified that he was viewed twice in the lineup and that a police officer told him that the complaining witness had not picked anyone out of the first lineup.

Detective Frank Kajari, one of the officers who conducted the lineup, testified that prior to the lineup, between 3:15 and 3:45 p.m., defendant's attorney, Len Maslowsky, had called the Area Six office. Kajari testified that he could not recall if defendant requested his attorney, but he told Mr. Maslowsky on the telephone that a lineup would be held at 4 p.m. and that he could attend if he wished. Although the lineup was delayed for 20 minutes, Mr. Maslowsky never appeared at the lineup. Detective Kajari also testified that Vickie Shinner immediately identified defendant at the lineup.

Attorney Maslowsky took the stand and stated that he was never notified of the lineup. He testified that at 2 p.m. on the day of the lineup he received a telephone call from a police officer who told him that defendant had asked the officer to contact his attorney. When he asked to speak with defendant, he was told that defendant was in transit to the Area Six police station. According to Mr. Maslowsky, the officer said that he would have defendant call his attorney. Two or

three hours later, the officer allegedly called to inform Maslowsky that defendant had been identified in a lineup. After hearing this testimony and argument by counsel, the trial court denied the motion to suppress, stating that defendant had no right to counsel at the lineup because he had not yet been charged with the crime for which he was placed in the lineup.

Defendant also filed pretrial motions for the appointment of medical experts to examine defendant and for a hearing on defendant's physical fitness to stand trial. In response to these motions, Sergeant Gerald F. Blazek, the sheriff's watch commander at Cook County Hospital, testified for the prosecution that defendant was in the custody of the sheriff's office while he was in the hospital for renal dialysis treatments. Sergeant Blazek testified that defendant had been repeatedly hospitalized and had previously refused dialysis. The sergeant also stated that on one occasion he had asked defendant why he was back in the hospital and the defendant replied that "it was either a third or fourth time armed robbery charge and he is too old to do any time in the penitentiary, he couldn't do twelve years or more." The trial court then denied defendant's motion for the appointment of expert witnesses to be paid for by the court. Defendant subsequently withdrew his motion for a fitness hearing because he was unable to pay for expert witnesses.

At the next trial date on May 2, 1983, the proceedings were delayed because defendant had been hospitalized for emergency treatment. The assistant State's Attorney raised the possibility that defendant had intentionally injured himself. In response, defense counsel again requested that experts be appointed to review defendant's mental and physical condition. When defendant arrived in court, however, there was no indication that he had voluntarily injured himself. The Cook County Hospital medical records librarian testified that defendant had been admitted to the hospital because he had complained of shortness of breath and had undergone dialysis because fluids had collected around his heart. After this testimony the trial court stated that it would not appoint experts because defendant was already being treated by doctors. When defense counsel indicated that defendant was being treated by residents and interns who could not be expert witnesses, the court stated that they could be brought in for whatever reason.

In connection with the pretrial motions regarding defendant's fitness, the court also heard evidence indicating that the 29-year-old defendant suffered from a hearing disability and that he had been diagnosed as having hypertension, epilepsy and a kidney ailment which

required dialysis treatments. In addition, the court had before it medical reports which showed that defendant had previously refused medical treatment and had once attempted suicide. The supplemental record included reports by two staff psychiatrists from the Psychiatric Institute who had examined defendant some four months before trial and found him to be mentally fit for trial. At various times during the pretrial hearings, defendant stated that he could not hear too well, but he did not renew his complaints during the trial.

At trial, complainant Vickie Shinner testified that on the night of the robbery she left a girlfriend's apartment and was walking toward her car which was parked on the 500 block of Grant Place in Chicago. She was walking west on Grant Place when she noticed a man approaching her. Shinner testified that the man grabbed her by the shoulders and demanded her purse. When she screamed, the man pulled a knife and held it to her throat, threatening to cut her throat if she said another word. With his left hand around Shinner and his right hand holding the knife to her throat, the man walked her up and down one-half of a block before he pushed her up against a fence and then forced her into a gangway between two buildings on Grant Place. At this point, two women came out and yelled that they had called the police. The man then grabbed her purse and ran down the alley.

Complainant testified that she "got a good look" at the man because he had approached her from the front and then walked with her for some distance in an area lit by street lights and lights from houses. The police arrived soon after the man ran into the alley, but were unable to locate him. Vickie Shinner described the man to the police as being a black male, six feet tall, 140-150 pounds, 27 years old, with a beard and wearing a long trench coat. Her description of the assailant was corroborated by the testimony of the two police officers who responded to the call. Detective Paul Carroll, who conducted the lineup along with Detective Kajari, testified that complainant immediately picked defendant out of the lineup on September 24, 1983.

Warner Haun testified for the defense that he was walking his dog in the alley on the night of the robbery. He stated that he saw a 5 feet 9 inches bearded black man in a trench coat run down the alley away from him while carrying something in his hand. Haun also testified that, later, he approached the police while they were talking to Vickie Shinner and the two women who had called the police. Haun testified that he overheard Shinner say that she could not recognize the robber's face because she had been grabbed from behind.

After hearing this testimony and the arguments of counsel, the

jury found defendant guilty of armed robbery and the court sentenced him to 15 years in prison.

■■ Defendant's first contention is that he was denied his sixth amendment right to counsel at the police lineup.

It is firmly established that a person's sixth and fourteenth amendment rights to counsel attaches only at or after the time adversary proceedings have been initiated by formal charge, preliminary hearing, indictment, information or arraignment. (*Kirby v. Illinois* (1972), 406 U.S. 682, 32 L. Ed. 2d 411, 92 S. Ct. 1877; *People v. Burbank* (1972), 53 Ill. 2d 261, 291 N.E.2d 161, *cert. denied* (1973), 412 U.S. 951, 37 L. Ed. 2d 1004, 93 S. Ct. 3017.) The right of counsel does not arise merely because when the pre-indictment lineup was held, defendant was in custody on an unrelated criminal matter and his right of counsel had attached as to that charge. (*People v. Martin* (1984), 102 Ill. 2d 412, 422-23, 466 N.E.2d 228, *cert. denied* (1984), 469 U.S. 935, 83 L. Ed. 2d 270, 105 S. Ct. 334; *People v. Agee* (1981), 100 Ill. App. 3d 878, 881-82, 427 N.E.2d 244; *People v. Earl* (1979), 78 Ill. App. 3d 188, 192-93, 397 N.E.2d 97.) Moreover, the right of counsel does not arise because charges are subsequently brought as a result of the lineup. *People v. Agee* (1981), 100 Ill. App. 3d 878, 427 N.E.2d 244.

Here, at the time of the lineup under question, defendant was in custody and represented by counsel on an unrelated theft charge. The State had not yet initiated formal proceedings against defendant on the robbery charge. Therefore, we find that defendant was not entitled to counsel at the lineup on September 24, 1982. Further, since the right to counsel had not attached, it was not error to proceed with the lineup despite defendant's alleged request that his attorney be present. *People v. Martin* (1984), 102 Ill. 2d 412, 423, 466 N.E.2d 228; *People v. Lamacki* (1984), 121 Ill. App. 3d 403, 414, 459 N.E.2d 1142, *appeal denied* (1984), 101 Ill. 2d 549; *People v. Logan* (1983), 117 Ill. App. 3d 753, 759, 453 N.E.2d 1317.

Defendant argues that the two charges were related for the purposes of the sixth amendment right to counsel because evidence seized as a result of the theft arrest led directly to defendant's being placed in a lineup during the robbery investigation. Since the two charges were related, defendant maintains, his right to counsel had attached as to the robbery charges as well as to the theft charge. We find this argument to be without merit. Courts have found that two charges are not related where they involve different criminal acts committed against different victims at different locations, even though defendant's participation in the lineup directly resulted from a prior arrest on another

charge. *People v. Martin* (1984), 102 Ill. 2d 412, 466 N.E.2d 228; *People v. Hall* (1983), 117 Ill. App. 3d 788, 453 N.E.2d 1327, *appeal denied* (1983), 96 Ill. 2d 562, *cert. denied* (1984), 467 U.S. 1228, 81 L. Ed. 2d 878, 104 S. Ct. 2683; *People v. Sanderlin* (1982), 105 Ill. App. 3d 811, 434 N.E.2d 279, *appeal denied* (1982), 91 Ill. 2d 578.

■ Even assuming, *arguendo*, that defendant's right of counsel regarding the robbery charge had attached at the time of the lineup, that would not have affected the admissibility of Shinner's in-court identification of defendant. The test of admissibility is whether the in-court identification had an independent origin arising from observations of the defendant which were uninfluenced by the allegedly illegal lineup. *People v. Agee* (1981), 100 Ill. App. 3d 878, 882, 427 N.E.2d 244; *People v. Earl* (1979), 78 Ill. App. 3d 188, 193, 397 N.E.2d 97; see also *People v. Dangerfield* (1979), 78 Ill. App. 3d 1046, 1049-50, 398 N.E.2d 57, *appeal denied* (1980), 79 Ill. 2d 632.

In this case, it is clear that the complainant had ample opportunity to view defendant at the time of the commission of the crime. She testified that she observed defendant as he walked toward her and that she got a good look at him when he grabbed her from the front and then walked up and down a well-lit street with her. Immediately after the incident, she gave the police a detailed description of her assailant which matched the defendant. Although Warner Haun's testimony contradicts that of the complainant, his testimony was uncorroborated while hers was supported by the two police officers who arrived at the robbery scene. From this evidence, the trial court reasonably could find that the in-court identification was made independently of the lineup identification and was admissible.

Defendant also contends that he was denied his right to be present at his trial and assist in his own defense where the trial court failed to take reasonable measures to insure that defendant could understand the proceedings despite his hearing disability. Specifically, defendant argues that the court's failure to take reasonable measures is evidenced by (1) the court's refusal to appoint medical experts to examine defendant in order to determine the extent of his disability, and (2) the court's refusal to order amplification of the proceedings.

The Illinois Constitution of 1970, article I, section 8, as well as the sixth amendment to the United States Constitution guarantees an accused the right to be present at his trial and to confront the witnesses against him. See also Ill. Rev. Stat. 1983, ch. 38, par. 104—10.

In *People ex rel. Myers v. Briggs* (1970), 46 Ill. 2d 281, 287, 263 N.E.2d 109, the Illinois Supreme Court set forth the general principles which apply to trials of deaf or blind defendants.

"The general rule in handling the trial of a criminal defendant who is handicapped by deafness, blindness or other affliction is that a trial judge should afford such a defendant reasonable facilities for confronting and cross-examining the witnesses as the circumstances will permit. He need only give such aid to intelligent appreciation of the proceeding as a sound discretion may suggest. The fact of blindness or deafness of the accused may lessen the ability and capacity of the defendant to utilize his constitutional rights, but this will not prevent his being subject to trial. In the proper administration of justice, however, the court should give a person accused of crime a reasonable opportunity to obtain the benefit of his constitutional rights. If he is deaf, such opportunity as may be necessary should be allowed for communication to him of the testimony of the witnesses to insure him a full and fair exercise of his legal rights. The exact manner in which this result should be arrived at must depend on the circumstances of the case and, to a considerable extent, be left to the sound discretion of the court."

Thus, what constitutes "reasonable facilities" to aid a handicapped defendant in confronting the witnesses against him depends on the circumstances of the case and rests in the sound discretion of the trial court. *People ex rel. Myers v. Briggs* (1970), 46 Ill. 2d 281, 287, 263 N.E.2d 109. See also *Ferrell v. Estelle* (5th Cir. 1978), 568 F.2d 1128, 1132.

In the case at bar, the trial court clearly was concerned with the problem of defendant's hearing disability. Before trial, the court stated on the record that it had been informed by defense counsel that defendant had partial hearing. Defense counsel also stated to the court that defendant seemed to be able to understand in their one-on-one conversations. The court offered defendant a hand interpreter but was informed that he could not read sign language. The trial court observed the defendant while he testified at the pretrial suppression hearing and saw that he was responsive to the questions asked of him. The court also questioned defendant about his ability to hear. In addition, the court instructed witnesses and attorneys to speak loudly and asked the attorneys not to interrupt each other so that defendant could hear. After the trial and the jury had retired to deliberate, the trial judge noted for the record that defendant had been bright and alert throughout the trial and had participated actively in the preparation of his defense by looking over transcripts.

Given the circumstances of this case, we find that the trial court took reasonable measures to insure that defendant was able to under-

stand the proceedings and assist in his defense. Consequently, we cannot say that the trial court's refusal to have defendant examined by experts paid for by the court or to order amplification of the proceedings was so unreasonable as to constitute an abuse of discretion.

■ Finally, defendant contends that the trial court abused its discretion in denying his request for an examination by court appointed experts and in failing to order a fitness hearing where there was a *bona fide* doubt as to whether defendant was mentally and physically fit to stand trial. We disagree.

A defendant has a right not to be tried or convicted while incompetent to stand trial. (*Drope v. Missouri* (1975), 420 U.S. 162, 43 L. Ed. 2d 103, 95 S. Ct. 896; *People v. Murphy* (1978), 72 Ill. 2d 421, 381 N.E.2d 677.) Defendant is unfit to stand trial if, because of his mental or physical condition, he is unable to understand the nature and purpose of the proceedings against him or to assist in his defense. (Ill. Rev. Stat. 1983, ch. 38, par. 104—10.) When a *bona fide* doubt of the defendant's fitness for trial is raised, the court has a duty to hold a fitness hearing before proceeding further. Ill. Rev. Stat. 1983, ch. 38, par. 104—11(a).

At the outset, we noted that defendant's motion for a fitness hearing was not denied by the trial court; instead, it was withdrawn by the defendant. However, we will consider the issue, because a court's failure to order a hearing, *sua sponte*, where defendant was unfit would constitute a denial of due process. (*Pate v. Robinson* (1966), 383 U.S. 375, 15 L. Ed. 2d 815, 86 S. Ct. 836.) The critical inquiry is thus whether the facts presented a *bona fide* doubt that defendant was able to understand the nature and purpose of the proceedings against him and was able to assist in his own defense. *People v. Murphy* (1978), 72 Ill. 2d 421, 428, 381 N.E.2d 677, 682.

Certain factors are to be considered in determining a defendant's fitness to stand trial: (a) counsel's assertion that defendant is unable to cooperate in his defense, (b) prior treatment of mental disability, and (c) defendant's demeanor at trial. (*People v. Johnson* (1984), 121 Ill. App. 3d 859, 860, 460 N.E.2d 336; *People v. Davenport* (1980), 92 Ill. App. 3d 244, 246, 416 N.E.2d 17.) The presence of more than one of these factors indicates that a defendant is unable to understand the nature of the proceedings against him or to assist in his defense. *People v. Johnson* (1984), 121 Ill. App. 3d 859, 460 N.E.2d 336.

In the case at bar, defense counsel asserted that defendant was unable to cooperate in his defense. However, counsel also stated that defendant seemed to understand their one-on-one conversations. Moreover, defense counsel's statements that he believed defendant

was unfit and could not cooperate with him are not sufficient to raise a *bona fide* doubt of defendant's fitness. *People v. Dominique* (1980), 86 Ill. App. 3d 794, 804, 408 N.E.2d 280, *appeal denied* (1980), 81 Ill. 2d 603.

Also the fact that defendant had previously attempted suicide and had been placing himself in life-threatening situations by refusing medical treatment did not necessarily raise a *bona fide* doubt regarding defendant's fitness to stand trial. (*People v. Dominique* (1980), 86 Ill. App. 3d 794, 408 N.E.2d 280; *People v. Heral* (1977), 54 Ill. App. 3d 527, 532, 369 N.E.2d 922, *appeal denied* (1978), 71 Ill. 2d 599.) In *Dominique*, the court found that the fact that defendant had been diagnosed as mentally ill some nine months before trial and was taking medication at time of trial to maintain contact with reality did not of itself raise a *bona fide* doubt of his fitness. (*People v. Dominique* (1980), 86 Ill. App. 3d 794, 804, 408 N.E.2d 280.) In contrast, the record in the present case reveals that a staff psychiatrist from the Psychiatric Institute had examined defendant four months before trial and found him to be mentally fit for trial. In addition, the court heard evidence which raised the possibility that defendant was malingering and refusing medical treatment in order to avoid being sent to the penitentiary. Clearly, the evidence was not sufficient to raise a *bona fide* doubt.

■ Defendant also argues that his physical ailments such as kidney disorders, epilepsy, hypertension and hearing impairment rendered him unfit to stand trial. We find this argument to be without merit. We are not dealing with a defendant such as Donald Lang, who was found to be incompetent to stand trial because he was a visually impaired, illiterate deaf-mute who was unable to communicate with anyone in any recognizable language. (*People v. Lang* (1984), 127 Ill. App. 3d 313, 468 N.E.2d 1303.) Defendant's ailments here did cause some delay in the proceedings, but there is no evidence that defendant's illnesses or the medical treatment he was receiving rendered him unable to understand the proceedings against him. The record clearly shows that despite his disabilities he was able to communicate effectively with his counsel, his custodians and the court.

■ Here, the trial judge was in a superior position to observe defendant and to evaluate his behavior and ability to understand the proceedings and to cooperate with defense counsel. He properly took into account his personal observation of defendant in determining whether or not a *bona fide* doubt existed. (*People v. Murphy* (1978), 72 Ill. 2d 421, 431, 381 N.E.2d 677; *People v. Dominique* (1980), 86 Ill. App. 3d 794, 804, 408 N.E.2d 280.) As indicated by the trial

judge's comments, it is clear that he felt that defendant took an active role in assisting in his defense. The trial court also observed defendant's testimony in regard to certain pretrial motions and saw that defendant understood the nature of the charge and the questions asked and that his answers were coherent and responsive. Defendant's active participation in the case and purposive testimony were inconsistent with his assertion of unfitness to stand trial. (See *People v. Murphy* (1978), 72 Ill. 2d 421, 381 N.E.2d 677; *People v. Jenkins* (1978), 67 Ill. App. 3d 565, 569, 384 N.E.2d 1348.) The record demonstrates that defendant was able to understand the nature of the proceedings against him and was able to cooperate with defense counsel. We find that the trial court did not abuse its discretion either in failing to order a fitness hearing or in refusing to appoint medical experts to examine the defendant.

The conviction and sentence are affirmed.

Affirmed.

BUCKLEY, P.J., and McGLOON, J., concur.