NO. 4-96-0627

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS,    )   Appeal from

Plaintiff-Appellee,           )   Circuit Court of

v.                            )   Woodford County

MELVIN K. LONG,                         )   No. 95TR4020

Defendant-Appellant.          )

                                        )   Honorable

                                        )   Donald D. Bernardi,

                                        )   Judge Presiding.

_________________________________________________________________

JUSTICE KNECHT delivered the opinion of the court:

After a stipulated bench trial in the circuit court of Woodford County, defendant Melvin K. Long was convicted of driv­ing under the influence of alcohol (DUI) (625 ILCS 5/11-501 (West 1994)).  The trial court placed defendant on 24 months' court su­per­vision, assessed $169 in costs, and ordered him to per­form 100 hours of public service work.  Defendant appeals, alleg­ing the trial court erred in denying his motion to suppress.  Defen­dant maintains the arresting police officer violat­ed his rights under the Amer­i­cans with Disabilities Act of 1990 (ADA) (42 U.S.C.A. §12101 
et
 
seq
. (West 1995)) by fail­ing to pro­vide him with a sign lan­guage in­ter­pret­er upon his request.  We affirm.

For his conduct on September 9, 1995, defendant re­ceived a traf­fic cita­tion for DUI.  On No­vem­ber 13, 1995, de­fen­dant filed a mo­tion to suppress evidence of the use of field- sobriety and breathalyzer tests.  Defendant, who is deaf, ar­gued the ADA requires law enforcement to provide quali­fied inter­pret­ers for individuals who are deaf.  Defendant maintained on sever­al occasions he requested the provision of a qualified in­terpret­er so he could understand the officer's instruc­tions, but the interpreter was not provided for him.  Defendant contend­ed be­cause he was denied an interpreter, a violation of his con­sti­tutional rights occurred when the officer obtained the field tests and the breathalyzer re­sults.  

Neither a transcript of the hearing on defendant's mo­tion to suppress nor a bystander's report of that hearing is in­cluded in the record.  The facts below, as well as the facts relied upon by the parties, are found in the common law re­cord and the trial court's writ­ten order following the hearing.

A police officer stopped defendant on Septem­ber 9, 1995, at approximately 10:30 p.m.  The officer advised de­fen­dant his taillights were not working, by showing the lights on his auto­mobile to him.  The officer demonstrated to defendant how to per­form field-sobriety tests.  Defendant, unable to hear any­thing, copied the officer and performed the field-sobriety tests.  De­fendant and the officer communicated periodically by using writ­ten notes.  The officer arrested defendant and trans­port­ed him to the Woodford County jail, where a breathalyzer test, per­formed by de­fendant, evidenced an alcohol concentration of .18.  

Prior to performing the breathalyzer test, defendant received the "Warn­ing to Motorist."  The applicable portions of the one-page warn­ing in­formed de­fen­dant:

"Considering the above, you are warned:

1.  If you refuse or fail to complete all chemical tests request and:

If you are a first offender, your driv­ing privileges will be suspended for a mini­mum of 6 months; 
or

If you are not a first offender, your driving privileges will be suspended for a minimum of 2 years.

2. If you submit to a chemical test(s) disclosing an alcohol concentration of 0.10 or more or any amount of a drug, substance or compound resulting from the unlawful use or consumption of cannabis listed in the Canna­bis Control Act or a controlled substance listed in the Illinois Controlled Substances Act and:

If you are a first offender, your driv­ing privileges will be suspended for a minimum of 3 months; 
or

If you are not a first offender, your driving privileges will be suspended for minimum of one year."  (Emphasis in original.)

Defendant indicated he did not understand the 
entire
 warning, but he did understand the consequences of refusing the test, 
i.e.
, he would receive a six-month suspension instead of a three-month suspension if he failed.  Based on that informa­tion, defendant decided to take the breathalyzer test.  De­fendant tes­tified he requested an interpreter four times, but the officer denied his requests.

The trial court found defendant was not provided a sign-language interpreter during his arrest.  The trial court, denying defendant's motion, concluded the ADA contemplates writ­ten com­mu­ni­ca­tion may ade­quately substitute for sign language, and found it did so in this case.  The trial court de­ter­mined de­fen­dant was able through writ­ten commu­nication to perform the field-so­briety tests common­ly given in DUI ar­rests.  The trial court con­cluded defen­dant understood the impact of his deci­sion in elect­ing to take the breathalyzer test.  

After the stipulated bench trial, defendant was sen­tenced.  De­fen­dant filed no­tice of ap­peal on Au­gust 9, 1996, one day after he was sen­tenced.  On Au­gust 27, 1996, defen­dant filed a mo­tion to re­con­sider.  On Sep­tember 5, 1996, defen­dant filed an amended mo­tion to reconsid­er and vacate judg­ment.  On October 10, 1996, the trial court denied defendant's motion to reconsid­er.  We note the filing of the notice of appeal divested the trial court of jurisdiction, so we have jurisdiction to consider the issue raised.  

On appeal, defendant maintains this court should re­verse his conviction because his requests for a sign language interpreter were denied.  Defendant cites statutory and case law regarding the requisite provision at trial of sign language in­ter­pret­ers for the deaf or "reasonable facilities" for individu­als with disabilities.  See, 
e.g.
, 725 ILCS 140/1 (West 1994); 
People ex rel. Myers v. Briggs
, 46 Ill. 2d 281, 287, 263 N.E.2d 109, 113 (1970); 
Peo­ple v. Branson
, 131 Ill. App. 3d 280, 287, 475 N.E.2d 905, 911 (1984).  Defen­dant pro­vides no statu­tory cites or case law di­rectly sup­porting his proposition that denial of an inter­preter during a DUI investigation de­nied his rights under the ADA.

The State cites the Code of Federal Regulations (28 C.F.R. §35.160 (1997)) and main­tains the po­lice offi­cer did not vio­late any rights under the ADA, because the ADA re­quires the public entity take appropriate measures to ensure communication with individu­als who are deaf are as effective as communications with others.  The State contends the deaf individual's re­quest must be given pri­ma­ry consider­ation, but that request need not be con­trolling if another effective means of communication exists.  The State also maintains under the decision in 
People v. Wegielnik
, 152 Ill. 2d 418, 605 N.E.2d 487 (1992), the implied-consent stat­ute and the due process clause do not require an individual un­derstand the consequences of refusing a blood-alco­hol test.  

Neither party cites controlling Illinois case or stat­utory law, and we know of none.  Based on our review of the re­cord and federal law, we find the trial court did not err in denying defendant's motion to sup­press.  
People v. Winters
, 97 Ill. 2d 151, 158, 454 N.E.2d 299, 303 (1983) (a court of review will not dis­turb a trial court's de­ter­mina­tion on a mo­tion to sup­press evi­dence unless the deci­sion is mani­fest­ly erro­ne­ous).  

The ADA pro­hib­its a pub­lic enti­ty from discriminating against any qual­ified indi­vid­u­al with a dis­abil­i­ty because of that disabil­ity.  42 U.S.C.A. §12132 (West 1995).  Ac­cording to the implementing regulations, the ADA requires the follow­ing:

"(a)  A public entity shall take appro­priate steps to ensure that communications with *** members of the public with disabili­ties are as effective as communications with others.

(b)(1)  A public entity shall furnish appropriate auxiliary aids and services where necessary to afford an individual with a disability an equal opportunity to partici­pate in, and enjoy the benefits of, a ser­vice, program, or activity conducted by a public entity.

(2)  In determining what type of auxil­iary aid and service is necessary, a public entity shall give primary consideration to the requests of the individual with disabili­ties."  28 C.F.R. §35.160 (1997). 

From the plain meaning of this regulation, a public entity is required to give "pri­ma­ry con­sid­er­ation" to the choice of the individual with dis­abil­i­ties, not to provide that individu­al's choice in every circumstance.  The im­plement­ing regula­tions also provide the follow­ing:

"'The pub­lic entity must pro­vide an op­por­tuni­ty for indi­vid­u­als with disabilities to re­quest the auxil­iary aids and ser­vices of their choice.  This expressed choice shall be given primary con­sider­ation by the public entity....  The public enti­ty shall honor the choice 
unless
 
it
 
can
 
demonstrate
 
that
 
an­other
 
effective
 
means
 
of
 
communi­cation
 
ex­ists
 ***.'"   (Emphasis added.)  
Pe­terson v. Hastings Pub­lic Schools
, 31 F.3d 705, 708 (8th Cir. 1994), quot­ing 28 C.F.R. Pt. 35.160, app. A, at 463 (1993).  

The ADA Hand­book suggests the use of writ­ten com­mu­nica­tion may be suffi­cient for effective communi­ca­tion in cer­tain circum­stanc­es.  The hand­book indicates factors to be consid­ered when deter­mining whether an interpreter rather than written com­munica­tions are required include the con­text in which the commu­nica­tion oc­curs, the num­ber of individ­uals in­volved, and the importance of the communications.  Other considerations include wheth­er the in­for­ma­tion is complex or exchanged for a long period of time.  H. Perritt, Amer­i­cans with Dis­abil­i­ties Act Hand­book, app. C, at 203 (3d ed. 1997).

The con­text of the com­mu­ni­ca­tion was a DUI in­ves­ti­ga­tion during the late evening hours on a Saturday night.  A re­quire­ment for po­lice offi­cers to delay their in­ves­tigation to make ar­range­ments for the provi­sion of a sign-language inter­pret­er would inter­fere with the law's objec­tives because the alco­hol concentration in the blood dissi­pates over time.  See 
Wegielnik
, 152 Ill. 2d at 425, 605 N.E.2d at 490.  The com­mu­nica­tion in­volved two individu­als.  The commu­nication was im­por­tant, as defen­dant was being investi­gated for a DUI, but the informa­tion was not com­plex, nor was it ex­changed over a long period of time.  Defen­dant acknowl­edged the use of written mate­rials.  Signifi­cant­ly, we note no find­ings or allega­tions the officer refused to communi­cate with de­fendant via writ­ten notes and no indication a sign-lan­guage interpreter would have helped defen­dant per­form the field-so­bri­ety tests or better understand the written warning.  De­fen­dant indi­cat­ed he was able to mimic the field-so­bri­ety tests, and he un­der­stood the warning to motor­ist regarding the conse­quences of taking the test.  Under these cir­cum­stances, we find the use of writ­ten com­muni­ca­tion and the officer's demon­stra­tion how to perform field-so­briety tests con­stituted effec­tive means of com­munica­tion, re­sulting in no prej­u­dice to defen­dant.

Affirmed.

COOK and McCULLOUGH, JJ., concur.